**The WRECK BAR, INC. d/b/a Centerfolds and James Armenakes**

v.

**Richard D. COMOLLI, Samuel A. Azzinaro, Barry F. Cole, Joseph P. Brancato, Mary Jane DiMaio, Patricia A. Douglas, and Quentin J. DeSimone, Members of the Town Council of Westerly, and Mark S. Champlin, Chief of Police for the Town of Westerly.**

Civ. A. No. 94–0324–T.

United States District Court, D. Rhode Island.

July 12, 1994.

motives attributed to the 97th Congress in rejecting the proposed modification of § 924(c).

Stephen J. Fortunato, Jr., Fortunato & Tarro, Warwick, RI, for plaintiffs.

Kelly M. Fracassa, Westerly, RI, for defendants.

## MEMORANDUM AND ORDER

TORRES, District Judge.

This is an action to declare void an ordinance prohibiting topless dancing as a form of entertainment in establishments licensed to sell alcoholic beverages and to enjoin municipal officials from prosecuting the plaintiffs or revoking their liquor license for presenting such entertainment. The action is brought pursuant to 28 U.S.C. § 2201 (the Declaratory Judgment Act) and 42 U.S.C. § 1983 (the Civil Rights Act of 1871).

The essence of the plaintiffs' claim is that the ordinance in question violates the plaintiffs' right to freedom of speech under the First and Fourteenth Amendments to the United States Constitution.[1] For reasons stated below, the plaintiffs' claims are denied and dismissed.

### FACTS

James Armenakes is the president and principal shareholder of the Wreck Bar, Inc., a corporation that owns and operates an establishment known as Centerfolds. Centerfolds is located in the Misquamicut section of Westerly, Rhode Island, and is licensed to sell liquor by the drink. Its license was issued by the Town of Westerly which, under state law, has the authority to issue and revoke such licenses. *See* R.I.Gen.Laws § 3–5–21.

Misquamicut is a commercial area bounded on one side by the Atlantic Ocean. It includes several public beaches, an amusement area and 11 businesses that sell liquor. Reports of public drinking and disorderly conduct are not uncommon in the area.

On May 11, 1994, Centerfolds obtained a license from the Town of Westerly permitting the presentation of live entertainment. The regulations then governing such licenses prohibited topless dancing. Those regulations were superseded on May 23, 1994, when the Westerly Town Council adopted the Ordinance at issue in this case. The pertinent portion of that Ordinance prohibits exposure of any portion of the female breast below the top of the areola in any "commercial establishment located within the Town of Westerly, Rhode Island, at which alcoholic beverages are offered for sale for consumption on the premises." Violation of the Ordinance is punishable as a misdemeanor and/or by revocation of the establishment's liquor license. Westerly Code of Ordinances, ch. 1070, art. V, § 7–89 (1994).

Since May 11, the principal form of entertainment at Centerfolds has consisted of female dancers who gradually remove articles of clothing until they are clad in thong bikinis which cover the requirements of the Ordinance but little else. The dancers are supplied by an entertainment agency and perform either on a raised platform or, for an additional fee, on individual tables. Bar patrons are permitted to show their appreciation by stuffing currency in the g-strings or garters worn by the dancers. Among the other forms of entertainment featured are "amateur strip nights," in which the dancers are non-professional volunteers, and "XXX banana eating contests," the object and rules of which were not explained.

In mid May, topless dancing was presented for a three day period without incident. However, on several occasions there have been problems associated with adult entertainment. On one occasion, a patron had to be escorted from the premises for fondling one of the dancers. On another occasion, after performing a series of pelvic thrusts while rubbing her genitals, and then turning her back to the audience, bending over and

---

1. The plaintiffs also assert virtually identical pendent claims for alleged violation of their rights under comparable provisions of the Rhode Island Constitution. In addition, the plaintiffs claim that the Ordinance violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it prohibits exposing female breasts but not male breasts. That claim is patently without merit and, in any event, has not been pressed.

spreading her buttocks, a dancer lay in a supine position with her legs spread and extended upward. From that position, she used what, in wrestling parlance is known as a "scissors" hold, to press a patron's face against her crotch.

According to Mr. Armenakes, Centerfolds is losing money but could operate at a profit if it is permitted to present completely topless dancing. Accordingly, the plaintiffs seek to have Ordinance 7–89 declared unconstitutional.

The origins of Ordinance 7–89 may be traced to a study conducted by the Town Council's Public Safety Subcommittee. That study began as a general review of Town ordinances relating to safety matters and was prompted by a murder taking place in Westerly which the defendants acknowledge had nothing to do with adult entertainment in liquor establishments. During the course of its review, the subcommittee became concerned about the potential for disturbances posed by such entertainment. Those concerns, as well as the belief that activity of that type should be eliminated in order to preserve a "high level of decency" in the community, were transmitted to the full Council. Those concerns were exacerbated by an incident that occurred on April 21, 1994, at a private club licensed to serve liquor. Several female dancers hired to provide entertainment at a "bachelor party" engaged in various sex acts with some of the men in attendance. A number of arrests were made and it was later discovered that one of the dancers was a minor.

The May 23, 1994, public hearing at which Ordinance 7–89 was adopted was brief and consisted primarily of questions addressed to the Town Solicitor by members of the Town Council and citizens in attendance. However, prior to the hearing, the Council had been furnished with a packet of reports compiled by the Police Department describing incidents of unlawful behavior and disturbances occurring in the Misquamicut area. Those reports indicate that during a three-year period, four disturbances specifically attributable to establishments providing adult entertainment occurred but only one was deemed sufficiently serious to warrant an arrest.

They also indicate that numerous other incidents occurred in the vicinity of those establishments, but it is difficult to say with any certainty whether they were different in character or frequency from disturbances often associated with any bar. Before the hearing, the Council, also, had met in executive session with the Town Solicitor, the Town Manager, the Director of Public Safety and the Chief of Police to discuss the reports and the bachelor party incident as well as the wording of the proposed ordinance.

## DISCUSSION

### I. The Underlying Principles

For many years, courts have struggled in their efforts to delineate the extent to which the First Amendment's prohibition against laws "abridging the freedom of speech" restricts governmental authority to regulate *conduct* that may play a role in communicating an idea or message. *See, e.g., Clark v. Community for Creative Non–Violence*, 468 U.S. 288, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984) (prohibition against sleeping in park upheld as constitutional as applied to protestors engaging in that conduct to demonstrate problems of homelessness); *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968) (conviction for burning draft card upheld although done as form of protest against Vietnam War). *But see United States v. Eichman*, 496 U.S. 310, 110 S.Ct. 2404, 110 L.Ed.2d 287 (1990) (statute banning flag-burning unconstitutional because state interest in regulating that conduct is dependent upon the message conveyed and not upon the nonspeech aspect of the conduct). Nevertheless, despite the proliferation of judicial opinions on the subject, the line of demarcation between "conduct" that may be regulated and "speech" that may not be regulated remains fuzzy.

A review of the case law identifies two factors that are central to a determination regarding the extent to which a State may constitutionally regulate a given type of conduct that includes an element of communication. They are:

1. The degree to which the conduct constitutes a form of expression as opposed to non-communicative acts; and

2. The source of the State's power to regulate that type of conduct.

■ Conduct does not become speech entitled to First Amendment protection merely because it includes some element of expression.

It is possible to find some kernel of expression in almost every activity a person undertakes—for example, walking down the street or meeting one's friends at a shopping mall—but such a kernel is not sufficient to bring the activity within the protection of the First Amendment.

*Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 570, 111 S.Ct. 2456, 2462, 115 L.Ed.2d 504 (1991) (quoting *Dallas v. Stanglin*, 490 U.S. 19, 109 S.Ct. 1591, 104 L.Ed.2d 18 (1989)). In this connection, the Supreme Court has stated that:

We cannot accept the view that an apparently limitless variety of conduct can be labelled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.

*O'Brien*, 391 U.S. at 376, 88 S.Ct. at 1678.

One matter that is considered in distinguishing between protected "speech" and unprotected "conduct" is whether the conduct in question includes acts that are proper subjects of government regulation.

... as the mode of expression moves from the printed page to the commission of public acts that may themselves violate valid penal statutes, the scope of permissible state regulations significantly increases. State may sometimes proscribe expression that is directed to the accomplishment of an end that the State has declared to be illegal when such expression consists, in part, of "conduct" or "action."

*California v. LaRue*, 409 U.S. 109, 118, 93 S.Ct. 390, 396, 34 L.Ed.2d 342 (1972).

■ These principles have been applied specifically to dancing. Whether First Amendment protection extends to dancing depends on the nature of the dancing or, more precisely, on the degree to which the dancing constitutes expression as opposed to non-communicative actions. Thus, recreational dancing does not come within the aegis of the First Amendment. *Dallas v. Stanglin*, 490 U.S. 19, 25, 109 S.Ct. 1591, 1595, 104 L.Ed.2d 18 (1989). On the other hand, dancing that is part of a performance presented to others, may be a protected form of expression. *Schad v. Borough of Mt. Ephriam*, 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981).

The nature of the dancing also affects the extent of the First Amendment protection afforded. State efforts to regulate dancing that is part of a performance presented to others is judged according to a four part test that essentially seeks to weigh the importance of the governmental interest involved against the extent to which the regulation impacts free expression. *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 111 S.Ct. 2456, 115 L.Ed.2d 504 (1991) (plurality).

In applying that test, a distinction is drawn between dancing that is part of a dramatic performance in a theater and dancing that may pass as entertainment in bars or nightclubs. Thus, in discussing the validity of a regulation similar to the one in this case, the *LaRue* Court said:

we would poorly serve both the interests for which the State may validly seek vindication and the interests protected by the First and Fourteenth Amendments were we to insist that the sort of bacchanalian revelries that the Department sought to prevent by these liquor regulations were the constitutional equivalent of a performance by a scantily clad ballet troupe in a theater.

409 U.S. at 119, 93 S.Ct. at 397.

The rationale for that distinction may be found in *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), where a plurality of the Court stated:

[while] the First Amendment will not tolerate the total suppression of erotic materials that have some arguably artistic value, it is manifest that society's interest in protecting this type of expression is of a wholly different, and lesser, magnitude than the

interest in untrammeled political debate....

427 U.S. at 70, 96 S.Ct. at 2452.

The extent of protection accorded to "nude barroom dancing" was set forth in *Barnes*. There, it was held, presumably without intending any pun, that such dancing involves only the "barest minimum" of protected expression and although, under some circumstances, it might be entitled to First Amendment Protection, it is, at most, only "marginally" within the "outer perimeters" of the First Amendment. *Barnes*, 501 U.S. at 566, 111 S.Ct. at 2460 (citing *California v. LaRue*, 409 U.S. 109, 118, 93 S.Ct. 390, 397, 34 L.Ed.2d 342 (1972)).

■ In contrast to the minimal protection accorded to "nude barroom dancing" is the broad power to regulate the sale of liquor conferred on the states by the Twenty–First Amendment. *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932–33, 95 S.Ct. 2561, 2568, 45 L.Ed.2d 648 (1975). That power has been described as "something more" than the authority derived from a state's inherent police power.

> While the States, vested as they are with general police power, require no specific grant of authority in the Federal Constitution to legislate with respect to matters traditionally within the scope of the police power, the broad sweep of the Twenty-first Amendment has been recognized as conferring something more than the normal state authority over public health, welfare, and morals.

*LaRue*, 409 U.S. at 115, 93 S.Ct. at 395.

That "something more" creates a presumption of validity that attaches to state regulation within the scope of the powers conferred by the Twenty–First Amendment. *LaRue*, 409 U.S. at 118–19, 93 S.Ct. at 397; *Olitsky v. O'Malley*, 597 F.2d 295, 300 (1st Cir.1979); *Lanier v. Newton*, 842 F.2d 253, 255 (11th Cir.1988). Because of that "something more," such regulation passes muster if it is "rational in light of the objectives sought." *Olitsky*, 597 F.2d at 300; *see LaRue*, 409 U.S. at 116–18, 93 S.Ct. at 395–96. Thus, the regulation need not satisfy the more stringent "substantial evidence" test applicable to regulations based solely on the police power. *Lanier*, 842 F.2d at 255–56 n. 3.

Accordingly, the Supreme Court has upheld regulations prohibiting topless dancing in establishments licensed to serve liquor on the ground that:

> the broad powers of the States to regulate the sale of liquor, conferred by the Twenty-first Amendment, outweighed any First Amendment interest in nude dancing and that a State could therefore ban such dancing as part of its liquor license control program.

*New York State Liquor Auth. v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981) (per curiam) (quoting *Doran*, 422 U.S. at 932–933, 95 S.Ct. at 2568). *See City of Newport, Kentucky v. Iacobucci*, 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986) (per curiam).

In *Bellanca*, the Court reasoned that "[t]he State's power to ban the sale of alcoholic beverages entirely includes the lesser power to ban the sale of liquor on the premises when topless dancing occurs." 452 U.S. at 717, 101 S.Ct. at 2601. *Bellanca* also specifically rejected the notion that "the state ... [was required to demonstrate] ... a need for prohibiting licensees from presenting nonobscene topless dancing performances to willing customers." 452 U.S. at 715, 101 S.Ct. at 2600. Instead, it held that "the statute was well within the State's power conferred by the Twenty–First Amendment, to regulate the sale of liquor within its boundaries." *Id.* at 715, 101 S.Ct. at 2600 (footnote omitted). The Court explained that:

> Whatever artistic or communicative value may attach to topless dancing is overcome by the State's exercise of its broad powers arising under the Twenty-first Amendment. Although some may quarrel with the wisdom of such legislation and may consider topless dancing a harmless diversion, the Twenty-first Amendment makes that a policy judgment for the state legislature, not the court.

*Bellanca*, 452 U.S. at 718, 101 S.Ct. at 2602.

II. *Delegation of Twenty–First Amendment Powers*

■ In this case, the plaintiffs contend that the Twenty–First Amendment is inappli-

cable because not all of the powers it confers on the State of Rhode Island have been delegated to the Town of Westerly and because, in fact, State law preempts any efforts by municipalities to enact ordinances like Ordinance 7–89. More specifically, the plaintiffs argue that Westerly's authority to issue and revoke liquor licenses does not include authority to prohibit topless dancing in licensed establishments.[2]

The issue of precisely how Rhode Island has chosen to allocate its Twenty–First Amendment powers is a subject of exclusive state concern and one in which the State has a vital interest. Accordingly, principles of comity counsel that it should be resolved by the state courts not the federal courts. *Cf. Louisiana Power and Light Co. v. City of Thibodaux,* 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959) (federal courts should abstain from addressing important issues of unclear state law where a decision could impact significant state interests); *Kaiser Steel Corp. v. W.S. Ranch Co.,* 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835 (1968) (per curiam).

Furthermore, *Iacobucci* makes it clear that resolution of the delegation question has no direct bearing on the plaintiffs' First Amendment claims. In *Iacobucci,* a Kentucky statute authorized the City of Newport to issue and revoke liquor licenses. However, Kentucky law, like Rhode Island law,[3] conferred on the voters of each municipality authority to decide whether sales of liquor should be permitted. Newport enacted an ordinance similar to Westerly's and the Sixth Circuit held it unconstitutional. The Sixth Circuit sought to distinguish *Bellanca* on the ground that the prohibition in *Bellanca* was contained in a state statute whereas the prohibition in *Iacobucci* was contained in a municipal ordinance. The Sixth Circuit reasoned that, because the Twenty–First Amendment confers authority to regulate intoxicating liquors on the States, and because not all of that authority had been delegated to the City of Newport, the City had no power to adopt the ordinance at issue. *Iacobucci v. City of*

*Newport, Kentucky,* 785 F.2d 1354, 1358–59 (6th Cir.1986), *rev'd,* 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986).

In reversing, the Supreme Court made it clear that the manner in which a state chooses to apportion its Twenty–First Amendment power is irrelevant for the purpose of determining the constitutionality of liquor license regulations. It pointedly refrained from expressing an opinion on the "state-law question of delegation of authority by the Commonwealth [of Kentucky] to the City of Newport." *Iacobucci,* 479 U.S. at 96 n. 6, 107 S.Ct. at 385 n. 6. Rather, the Court stated that:

> In holding that a State "has broad power ... to regulate the times, places, and circumstances under which liquor may be sold," ... this Court has never attached any constitutional significance to a State's division of its authority over alcohol. The Twenty-first Amendment has given broad power to the States and generally they may delegate this power as they see fit.
>
> There is certainly no constitutional requirement that the same governmental unit must grant liquor licenses, revoke licenses, and regulate the circumstances under which liquor may be sold.

*Id.* at 96, 107 S.Ct. at 385 (citations and footnotes omitted). The Court concluded by holding that "[t]he fact that the Commonwealth of Kentucky has delegated one portion of its power under the Twenty–First Amendment to the electorate—the power to decide if liquor may be served in local establishments—does not differentiate this case from *Bellanca.*" *Iacobucci,* 479 U.S. at 97, 107 S.Ct. at 386.

Despite the fact that *Iacobucci* makes it unnecessary to address the delegation question, this Court, ordinarily, would certify the question to the Rhode Island Supreme Court because resolution of the issue might make it unnecessary to address the plaintiffs' constitutional claims. *See, e.g., Lanier v. Newton,* 842 F.2d 253, 254 (11th Cir.1988). However,

---

**2.** The Rhode Island Supreme Court has addressed this question only in general terms. *See Thompson v. East Greenwich,* 512 A.2d 837 (R.I. 1986).

**3.** *See* R.I.Gen. Laws § 3–5–2.

the circumstances in this case make certification inappropriate for several reasons. First, the plaintiffs are seeking injunctive relief to prevent alleged infringement of their First Amendment rights. Because of the importance of First Amendment rights, an assessment of the validity of the plaintiffs' claim should not be delayed until a response can be obtained from the Rhode Island Supreme Court.

Normally, that assessment would take the form of an appraisal of the plaintiffs' likelihood of future success on the merits so that a determination could be made as to whether a preliminary injunction should issue. However, this case already has been tried on the merits.[4] There is nothing further to present with respect to the constitutional claims asserted. Thus, the question posed is not whether the plaintiffs are *likely* to succeed on their claim that Ordinance 7–89 is unconstitutional. Rather, it is whether the plaintiffs *have* succeeded. Once this Court has made that determination, certification will serve no purpose. Moreover, as already noted, any decision made by the Rhode Island Supreme Court with respect to the delegation issue will not directly bear on the determination as to whether the Ordinance is a permissible exercise of Twenty–First Amendment powers, although it could affect the validity of Westerly's Ordinance under state law. *Iacobucci,* 479 U.S. at 96, 107 S.Ct. at 385.

III. *Requirements of Twenty–First Amendment*

■ The plaintiffs, in this case, argue that the Westerly Ordinance is invalid because it was adopted without any evidence that the proscribed conduct posed a significant threat to public safety and because it was enacted for an impermissible purpose, namely, establishing a standard of morality. The Court finds both arguments unpersuasive.

■ As already noted, *Bellanca* makes it plain that, in exercising its Twenty–First Amendment power to regulate topless dancing in barrooms, a state is not required to empirically demonstrate a need for such regulation. *See Bellanca,* 452 U.S. at 715, 101 S.Ct. at 2600. Although desirable, it is not even necessary for a legislative body to make explicit findings regarding the need for such regulation. *See Lanier,* 842 F.2d at 255; *Fillingim v. Boone,* 835 F.2d 1389, 1397 (11th Cir.1988).

Even if such evidence was required, it was presented in this case. The reports of disturbances presented to the Town Council and the April 21 incident provided a rational basis for concluding that the combination of liquor and nude dancing posed a threat to public safety and order. The fact that the incidents (other than the one on April 21) were relatively minor does not render the Council's decision irrational. The Council was entitled to take preventative action and was not required to stay its hand until after a major incident occurred.

■ The argument regarding the Ordinance's purpose is equally unavailing. To the extent that argument is based on the allegation that the Council was motivated by considerations of morality rather than public safety, it misses the mark. Generally speaking, the subjective beliefs or motives of legislators are not relevant in determining whether regulations serve a permissible purpose, partly, because it is virtually impossible "to discern ephemeral legislative motivations." *SDJ, Inc. v. City of Houston,* 837 F.2d 1268, 1274 (5th Cir.1988); *see O'Brien,* 391 U.S. at 384, 88 S.Ct. at 1683. Rather, the focus is on whether the regulation serves a legitimate governmental purpose. *O'Brien,* 391 U.S. at 380–84, 88 S.Ct. at 1680–83; *Barnes,* 501 U.S. at 582–84, 111 S.Ct. at 2469 (Souter, J., concurring) (citing *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961)).

■ Moreover, reasons of morality properly may be the basis for legislation subject to rational basis analysis. *See Barnes,* 501 U.S. at 574–75, 111 S.Ct. at 2468 (Scalia, J., concurring) (citing *Bowers v. Hardwick,* 478 U.S. 186, 196, 106 S.Ct. 2841, 2846, 92 L.Ed.2d 140 (1986)). However, they may not

4. By agreement of the parties, the hearing on the merits was consolidated with the preliminary injunction hearing pursuant to Fed.R.Civ.P. 65(a)(2).

amount to attempts to restrict expression based on its content. *See AAK, Inc. v. City of Woonsocket,* 830 F.Supp. 99, 104 (D.R.I. 1993); *Barnes,* 501 U.S. at 570–72, 111 S.Ct. at 2463. The very purpose of the First Amendment was to protect forms of expression that may be unpopular or repugnant to prevailing mores.

In this case, it is true that one councilman acknowledged that one of the reasons he voted for the Ordinance was his desire to "document a community standard of morality." However, even if one accepts the premise that the councilman's view was shared by a majority of his colleagues, he made it clear that public morality was only a secondary consideration and that his principal purpose was to promote public safety. In this connection, it is settled law that when a regulation serves a permissible purpose it is not rendered unconstitutional by the fact that it also might serve a secondary impermissible purpose. *O'Brien,* 391 U.S. at 383, 88 S.Ct. at 1682; *Washington v. Davis,* 426 U.S. 229, 243, 96 S.Ct. 2040, 2049, 48 L.Ed.2d 597 (1976); *Palmer v. Thompson,* 403 U.S. 217, 224–25, 91 S.Ct. 1940, 1944–45, 29 L.Ed.2d 438 (1971); *Lanier,* 842 F.2d at 255–56 n. 3.

In short, under Twenty–First Amendment analysis, all that is required is a reasonable basis for concluding that topless barroom dancing implicates public safety concerns and that the regulation rationally addresses those concerns. In this case, those requirements are fully satisfied. The Supreme Court has expressly recognized the reasonableness of concluding that nude barroom dancing may have an adverse effect on public safety and order. *E.g., Bellanca,* 452 U.S. at 717–18, 101 S.Ct. at 2601–02; *LaRue,* 409 U.S. at 118, 93 S.Ct. at 397. Here, the reasonableness of that conclusion is further supported by information presented to the Town Council prior to its adoption of Ordinance 7–89 regarding disturbances and the potential for disturbances at liquor establishments featuring adult entertainment and the April 21 incident at the private club.

Nor is there any question that the Westerly Ordinance rationally addresses those public safety concerns. It is specifically directed at, and its reach is limited to, the conduct giving rise to those concerns. It does not prohibit all nude dancing nor does it prohibit all forms of dancing that may convey an erotic message. The Ordinance prohibits only nude dancing in establishments licensed to serve alcoholic beverages. Consequently, the plaintiffs, and others, remain free to "express" themselves in other kinds of establishments or to communicate their erotic message, albeit somewhat less graphically, via *non* nude dancing in licensed liquor establishments. *Barnes,* 501 U.S. at 570–72, 111 S.Ct. at 2463.

## CONCLUSION

For all of the foregoing reasons, the Court finds that any marginal First Amendment interest the plaintiffs may have in the topless barroom dancing in question is outweighed by the State's Twenty–First Amendment interest in regulating the circumstances under which liquor may be served. Furthermore, the Court finds that the regulation in question serves a legitimate state purpose and is rationally related to the achievement of that purpose. Accordingly, the plaintiffs' claims are denied and dismissed.

IT IS SO ORDERED.