EL MAROCCO CLUB, INC., et al.

v.

Kenneth RICHARDSON, in his capacity as Treasurer of the Town of Johnston et al.

No. 98–213–Appeal.

Supreme Court of Rhode Island.

Feb. 18, 2000.

Robert S. Ciresi, North Providence, Daniel A. Silver, for plaintiff.

Kathleen M. Powers, Marc DeSisto, R. Kelly Sheridan, Providence, for defendant.

Present WEISBERGER, C.J., and LEDERBERG, BOURCIER, FLANDERS, and GOLDBERG, JJ.

## OPINION

FLANDERS, Justice.

Under applicable state law and consistent with the free-speech rights protected by the United States Constitution, can a municipality enact an ordinance that prohibits displays of nudity at local liquor-serving establishments? For the reasons bared below, we answer this question in the affirmative.

### Facts and Travel

The plaintiff nightclub, El Marocco Club, Inc., appeals from the Superior Court's entry of a judgment in favor of the defendant, Town of Johnston (town). The plaintiff sought to invalidate town Ordinance No. 965, first enacted in 1996, because it prohibited displays of nudity at plaintiff's nightclub and at other local liquor-serving establishments.[1] On March 27, 1997, the town's police ordered plaintiff to cease and desist from violating the ordinance. At that time plaintiff featured nude barroom dancing and sold alcoholic beverages for consumption at its Johnston nightclub. The plaintiff, in turn, filed this lawsuit contesting the validity of the Ordinance, asking for injunctive relief, and seeking damages for the business it claimed to have lost stemming from the town's enforcement of the ordinance, including damages under 42 U.S.C. § 1983. After the Superior Court denied plaintiff's motion for temporary injunctive relief, the town moved for and obtained a summary

judgment dismissing plaintiff's complaint. Because we hold that Ordinance No. 965 constituted a valid exercise of the town's power to impose reasonable conditions upon the granting of local liquor licenses and did not unconstitutionally abridge plaintiff's free-speech rights as protected by the First and Fourteenth Amendments to the United States Constitution, we affirm the court's entry of summary judgment in favor of the town.

On appeal, plaintiff raises two arguments. First, it contends that the town lacked the power under state law to adopt Ordinance No. 965. Second, plaintiff suggests that even if the town had the power to do so, the ordinance abridged plaintiff's First and Fourteenth Amendment rights under the United States Constitution to engage in protected-free-speech activities. In turn, we undress each of these arguments.

## I

### Did the Town Have the Power to Enact Ordinance No. 965?

The plaintiff first contends that the town lacked authority under applicable state law to enact Ordinance No. 965 because the ordinance became effective before the General Assembly's adoption of P.L.1997, ch. 9, amending G.L.1956 § 3–7–7.3.[2] That amendment authorized municipalities in Rhode Island that issue Class B liquor licenses to restrict or prohibit entertainment at such licensed facilities.[3] The plaintiff argues that before this 1997 amendment to § 3–7–7.3 became effective on March 25, 1997, the town lacked the

1. The full text of ordinance No. 965 is appended to this opinion.

2. Ordinance No. 965 was enacted on February 12, 1996, and reenacted on January 13, 1997. The 1997 amendment to G.L.1956 § 3–7–7.3 became effective on March 25, 1997.

3. Section 3–7–7.3, as amended by P.L.1997, ch. 9, § 1, provides that:

"**Class B licenses—Restriction on entertainment.—**
"Notwithstanding any provision of this chapter or in the Rhode Island General Laws to the contrary, in the case of *any* city or town which issues any retailer's license, Class B, such city or town may restrict or prohibit entertainment at such licensed facilities, provided that any restriction(s) or prohibition applies uniformly to all such licensed facilities." (Emphasis added.)

authority to restrict or prohibit nude-dancing entertainment at liquor-serving establishments in the town.[4] Because the town enacted Ordinance No. 965 before the effective date of the 1997 amendment to § 3–7–7.3, plaintiff contends that the town's adoption of Ordinance No. 965 was *ultra vires*. Further, plaintiff argues that the 1997 amendment to § 3–7–7.3 does not apply retrospectively to validate this ordinance.

■ Prospectively, we conclude that plaintiff's challenge to the validity of Ordinance No. 965 has been rendered moot by the town's enactment of Ordinance No. 1057, which it passed in November 1998. Because this later-enacted ordinance is virtually identical to Ordinance No. 965, there can be no question but that the town was empowered by the General Assembly to enact Ordinance No. 1057 after the 1997 amendment to § 3–7–7.3 became effective on March 25, 1997. Moreover, even before the 1997 amendment to § 3–7–7.3, the General Assembly had authorized municipalities to attach reasonable conditions to the issuance of liquor licenses. *See Thompson v. Town of East Greenwich,* 512 A.2d 837 (R.I.1986).

> "According to § 3–5–15, the General Assembly has delegated to 'the town councils or license boards of the several towns' the full and plenary power to issue, inter alia, class-B liquor licenses. This authority to issue such licenses is logically and appropriately complemented by § 3–5–21, which legislatively empowers these same governing bodies to revoke or suspend a liquor license for breach of any conditions upon which it was issued. From a review of the lan-

guage in § 3–5–21, *it is our considered judgment that the Legislature intended in conferring the power to revoke or suspend to implicitly authorize municipalities to attach conditions to the issuance of liquor licenses.* If such an implication is not read into the statute, the power to revoke or suspend becomes a nullity since there is no basis upon which it can be exercised." *Id.* at 841 (citing *Gott v. Norberg,* 417 A.2d 1352, 1356–57 (R.I.1980)). (Emphasis added.)

We conclude that the ordinance in question—barring public displays of nudity at commercial establishments that serve liquor—effectively constituted a condition upon the issuance of liquor licenses in the town. Title 3 of the General Laws permitted such conditions even before the 1997 amendment to § 3–7–7.3 became effective because they are in furtherance of the declared purpose of this title, namely, "the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages." G.L.1956 § 3–1–5. Moreover, § 3–7–7.3, as amended in 1997, grants to municipalities the specific authority to *prohibit* all entertainment at establishments holding Class B liquor licenses. Because Ordinance No. 1057 was passed *after* the 1997 effective date of § 3–7–7.3, the town unquestionably possessed the statutory authority to enact an ordinance that would effectively prevent nude entertainment at the town's liquor-serving establishments. As a result, plaintiff's request for injunctive and declaratory relief vis-à-vis Ordinance No. 965 has been effectively rendered moot by the town's enactment of Ordinance No. 1057.

The plaintiff further argues, however, that the General Assembly has preempted

---

4. In 1993, § 3–7–7.3 was enacted and provided:

> "Notwithstanding any provision of this chapter or in the Rhode Island General Laws to the contrary, in the case of any city or town which prior to July 1, 1993, had not previously issued any retailers license, Class B, such city or town may restrict or prohibit entertainment at such newly li-

censed facilities, provided that any such restriction(s) or prohibition applies uniformly to all such newly licensed facilities." P.L.1993, ch. 374, § 1.

The plaintiff argues that because the town had issued Class B liquor licenses prior to July 1, 1993, it did not have the power under the 1993 version of § 3–7–7.3 to restrict or to prohibit nude entertainment in establishments possessing such licenses.

this type of entertainment regulation from municipal licensing. The plaintiff points to the text of § 3–7–7 in support of its argument. That law provides that no "dances" shall be permitted in establishments holding Class B liquor licenses unless a permit is obtained from the local licensing authority.[5] Section 3–7–7(a)(3). This language has been interpreted to address those dances "to which admission can be obtained only by the payment of a separate fee or charge," and not "to the incidental kind of entertainment which may be provided for patrons while they are dining and for which they pay no separate charge." *Chernov Enterprises, Inc. v. Scuncio,* 107 R.I. 439, 443–44, 268 A.2d 424, 427 (1970). Because the nude dancing offered by plaintiff was of the latter type, § 3–7–7(a)(3) was not applicable to its situation. Nevertheless, plaintiff argues that § 3–7–7 amounts to legislative control of the *types* of entertainment that may be permitted in a Class B liquor-licensed establishment, and therefore it concludes that the General Assembly has preempted the field to the exclusion of municipal regulation of this activity. The plaintiff also points to § 3–7–7.3 in support of its preemption argument. It argues that, before the 1997 amendment to § 3–7–7.3 (which expressly empowered *all* municipalities to prohibit or restrict entertainment in those establishments holding Class B liquor licenses), the 1993 enactment of this law only gave such power to *certain* specified Rhode Island cities and towns (not including this municipality) that had not previously issued Class B liquor licenses. Thus, plaintiff argues, before the 1997 Amendment, the General Assembly retained control over which municipalities had the power to regulate such entertainment and this retained control effectively preempted the town's attempts to regulate in this area.

We are of the opinion that plaintiff has misconstrued both § 3–7–7 and

§ 3–7–7.3. Under § 3–7–7, the General Assembly did not attempt to regulate all types of entertainment at liquor-serving establishments in a manner that would justify a conclusion that it intended to preempt municipalities from regulating in this area. On the contrary, the General Assembly delegated the power to permit certain types of dances at such establishments (namely, those "to which admission can be obtained only by the payment of a separate fee or charge," *Chernov Enterprises, Inc.,* 107 R.I. at 443–44, 268 A.2d at 427), to *local* licensing boards, and expressly empowered such boards to revoke or suspend such licenses "for breach by the holder of the license of the conditions on which it was issued * * *." G.L.1956 § 3–5–21. Absent a direct conflict between a statute and an ordinance, or some other clear indication, either express or implied, that the General Assembly intended to occupy the field of liquor licensing and its regulation to the exclusion of local licensing authorities, state law will not be held to preempt local ordinances in this area. *See Providence City Council v. Cianci,* 650 A.2d 499, 501 (R.I.1994).

Here, the General Assembly has not manifested a clear legislative intent to deprive the various municipalities of their delegated power to license establishments that serve liquor and to impose reasonable conditions upon the granting of such licenses. In fact, state law quite clearly delegates the state's licensing power *to* the local licensing authorities and permits such licenses to be revoked or suspended for breach of any of the conditions on which the license has been issued. *See* § 3–5–21. Section 3–7–7(a)(3) merely provided that Class B liquor-licensed establishments were not allowed "to hold dances" for which a separate fee would be charged, unless the municipality's licensing board authorized such entertainment. In adopting Ordinances No. 965 and No. 1057, the

---

**5.** Section 3–7–7(a)(3) provides:

"Holders of licenses are not permitted to hold dances within the licensed premises, unless proper permits have been properly obtained from the local licensing authorities."

town effectively codified its preexisting power to impose conditions upon the issuance of a Class B liquor license by imposing a reasonable, a priori condition on the holders of such licenses: to .wit, no displays of nudity shall be allowed at such locations. We hold, therefore, that the General Assembly has not manifested any intention to deprive the town of jurisdiction to regulate in this area. And because no direct conflict exists between the relevant municipal ordinances and applicable state law, plaintiff's preemption argument fails for want of satisfying the requisite elements for establishing such a claim.

■ Moreover, § 3–7–7.3 does not evidence any legislative intention to preempt municipal regulation of liquor establishments. On the contrary, the 1997 amendment to § 3–7–7.3 specifically endows *all* cities and towns with the exclusive power to restrict or prohibit entertainment in establishments holding Class B liquor licenses. As a result, this law specifically confirms that entertainment-related conditions imposed by municipalities upon the holders of liquor licenses are indeed within their preexisting power to subject the granting of such licenses to reasonable conditions. Thus, even though Ordinance No. 965 was enacted prior to the 1997 amendment to § 3–7–7.3, the town was authorized to enact this law because it constituted a reasonable condition upon the issuance of Class B liquor licenses in the town. And Ordinance No. 1057 clearly falls within the ambit of the 1997 amendment. Accordingly, after 1997, there can be no question but that the General Assembly has authorized municipal ordinances such as No. 1057. We also conclude, however, that the 1997 amendment merely clarified what was already implicit in the preexisting versions of § 3–5–15 and § 3–5–21: namely, a legislative intention

to allow municipalities to impose reasonable conditions upon the holders of Class B liquor licenses. *See Thompson,* 512 A.2d at 841. We hold, therefore, that the town was authorized to pass Ordinance No. 965 as a valid exercise of the power delegated to it by the state pursuant to title 3 of the General Laws.

■ The plaintiff also alleged that the doctrine of equitable estoppel should have barred the application of Ordinance No. 965 to its nightclub. The plaintiff essentially contended that because the no-public-display-of-nudity conditions mandated by Ordinance No. 965 had not been imposed upon plaintiff before the enactment of that ordinance, and because the plaintiff had expended considerable funds in preparing its nightclub for nude dancing, the town should be estopped from enforcing the ordinance with respect to this aspect of its business. However, even assuming without deciding that the doctrine of equitable estoppel could be applied against a municipality in this context, plaintiff failed to establish the requisite conditions precedent for applying this doctrine.[6]

■ For equitable estoppel, or estoppel *in pais,* to apply, the following elements must be established:

"first, an affirmative representation or equivalent conduct on the part of the person against whom the estoppel is claimed which is directed to another for the purpose of inducing the other to act or fail to act in reliance thereon; and secondly, that such representation or conduct in fact did induce the other to act or fail to act to his injury." *Providence Teachers Union v. Providence School Board,* 689 A.2d 388, 391–92 (R.I. 1997) (quoting *Lichtenstein v. Parness,* 81 R.I. 135, 138, 99 A.2d 3, 5 (1953)).

---

6. It appears from the Johnston town records that, pursuant to G.L.1956 chapter 22 of title 5, plaintiff has applied for annual entertainment licenses since 1991. The license applications specified the entertainment as being for "banquet facility" or "banquet facility and

restaurant" purposes. Only one license, issued in 1997, was for purposes of "night club entertainment." The 1998–1999 license specifically noted that "no adult entertainment" was permitted.

Moreover, "[t]he key element of an estoppel is intentionally induced prejudicial reliance." *East Greenwich Yacht Club v. Coastal Resources Management Council,* 118 R.I. 559, 568, 376 A.2d 682, 686 (1977) (citing *Raymond v. B.I.F. Industries, Inc.,* 112 R.I. 192, 198–99, 308 A.2d 820, 823 (1973)). Therefore, to establish that it was entitled to the benefits of the equitable estoppel doctrine, plaintiff had to show that one or more duly authorized representatives of the town affirmatively represented to it by word or deed that—notwithstanding the town's future enactment of ordinances outlawing such conduct—it still would be allowed to offer nude dancing at its liquor-serving establishment; that such representations were designed to induce plaintiff's reliance thereon; and that plaintiff actually and justifiably relied thereon to its detriment. *Id.* Just as a municipality's mere failure to impose certain licensing conditions in the past would not justify a licensee in concluding that such conditions will never be imposed in the future, so too the town's mere failure to bar displays of nudity at its Class B licensed liquor establishments *before* the enactment of Ordinance No. 965 did not amount " 'to an affirmative representation or equivalent conduct' " towards plaintiff that it would not do so in the future. *Providence Teachers Union,* 689 A.2d at 391. Accordingly, merely by showing that the town had failed to adopt such an anti-display-of-nudity restriction before it enacted Ordinance No. 965, plaintiff failed to satisfy the first requirement for applying the equitable estoppel doctrine.

Furthermore, plaintiff's liquor and entertainment licenses have always been subject to annual renewals from the town. As a liquor-serving licensee operating in this heavily regulated commercial arena, plaintiff was not entitled to presume that by obtaining an original liquor license from the town without the anti-nudity conditions, it would thereafter be able to estop the town from ever imposing such conditions in the future via the enactment of ordinances like No. 965 and No. 1057.

Thus, we conclude, plaintiff has failed to satisfy the prerequisites for obtaining the benefits of the equitable estoppel doctrine.

## II

### Does Ordinance No. 965 Unconstitutionally Infringe Upon the El Marocco Club's First Amendment Right of Free Expression?

The plaintiff urges us to hold that the town's enforcement of Ordinance No. 965 against its offering of nude-barroom dancing violated its First and Fourteenth Amendment rights of free expression under the United States Constitution (Constitution). The plaintiff correctly argues that the United States Supreme Court has eliminated the presumption of validity that previously attached to state regulation of alcohol based upon the Twenty-first Amendment to the Constitution. *See 44 Liquormart, Inc. v. Rhode Island,* 517 U.S. 484, 116 S.Ct. 1495, 134 L.Ed.2d 711 (1996). In *44 Liquormart,* the Court overruled a series of cases holding that the Twenty-first Amendment required courts to accord state liquor regulations an *added* presumption of validity. *See, e.g., California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972). Based upon the *LaRue* decision, ordinances similar to this one were upheld as constitutional. *See City of Newport, Kentucky v. Iacobucci,* 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986); *New York State Liquor Authority v. Bellanca,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981); *Cafe 207, Inc. v. St. Johns County,* 989 F.2d 1136 (11th Cir. 1993); *International Eateries of America v. Broward County,* 941 F.2d 1157 (11th Cir.1991); *Lanier v. City of Newton, Alabama,* 842 F.2d 253 (11th Cir.1988); *Grand Faloon Tavern, Inc. v. Wicker,* 670 F.2d 943 (11th Cir.1982). The *44 Liquormart* decision, however, held that "the Twenty-first Amendment does not qualify the constitutional prohibition against laws abridging the freedom of speech embodied in the First Amendment." *44 Liquormart,*

Inc., *517 U.S. at 516, 116 S.Ct. at 1515, 134 L.Ed.2d at 736.* In so ruling, the Supreme Court decided that state regulation of liquor under the Twenty-first Amendment does not trump the constitutional protections contained in, among other constitutional provisions, the First Amendment's prohibition against laws abridging the freedom of speech. See id.[7] Thus, the high Court's removal of this Twenty-first Amendment "make-weight" argument in 44 Liquormart *does not eliminate the need for reviewing courts to conduct a traditional, First Amendment analysis when local liquor-related regulations are challenged.*[8] See 44 Liquormart, *517 U.S. at 516, 116 S.Ct. at 1515, 134 L.Ed.2d at 736.*

The plaintiff contends that the town's Ordinance No. 965 impermissibly restricted its First–Amendment right to engage in protected-speech activity because it was a restriction based on the *content* of the regulated activity. As such, plaintiff argues, it should be subject to the "most exacting scrutiny." *Turner Broadcasting System, Inc. v. FCC,* 512 U.S. 622, 642, 114 S.Ct. 2445, 2459, 129 L.Ed.2d 497, 517 (1994) (stating that "[o]ur precedents thus apply the most exacting scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content"). Although it is true that the United States Supreme Court has recognized some measure of free speech interest in nude-barroom dancing, the Court has stated that such activity falls, at most, only "marginally" within the "outer perimeters" of the First Amendment.

*Barnes v. Glen Theatre, Inc.,* 501 U.S. 560, 566, 111 S.Ct. 2456, 2460, 115 L.Ed.2d 504, 511 (1991).

■ Notably, the ordinances at issue here do not constitute an outright prohibition on all displays of nudity or on nude dancing in the town; rather, the ordinances prohibit the display of nudity *only* in places that are licensed to serve liquor for consumption on the premises. The evident purpose of this regulation was to avoid the undesirable secondary effects of mixing the consumption of alcoholic beverages with nude dancing and other such displays of nudity at establishments that are open to the public and contiguous to other parts of the town that might be vulnerable to such adverse effects. As a result, we hold that this ordinance did not constitute a content-based regulation, but, was, rather, a content-neutral regulation that merely restricted the time, manner, and places in the town where displays of nudity could occur. "Content-neutral time, place or manner" restrictions are acceptable "so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative avenues of communication." *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29, 37, *reh'g denied,* 475 U.S. 1132, 106 S.Ct. 1663, 90 L.Ed.2d 205 (1986) (explaining that content-neutral regulations are acceptable as long as they are narrowly tailored to serve a significant government interest and leave open alternate channels

---

**7.** The Supreme Court had previously held that the Twenty-first Amendment did not diminish the force of the Supremacy Clause, *see Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 716, 104 S.Ct. 2694, 2709, 81 L.Ed.2d 580, 600 (1984); the Establishment Clause of the First Amendment, *see Larkin v. Grendel's Den,* 459 U.S. 116, 122 n. 5, 103 S.Ct. 505, 74 L.Ed.2d 297 (1982), or the Equal Protection Clause of the Fourteenth Amendment, *Craig v. Boren,* 429 U.S. 190, 209, 97 S.Ct. 451, 463, 50 L.Ed.2d 397, 414 (1976).

**8.** In fact, the Supreme Court reaffirmed the precedential value of *LaRue* and the *Barnes–*

*O'Brien* test, *infra,* in *44 Liquormart, Inc. v. Rhode Island.* Although, as explained above, the Court disavowed the idea expressed in prior cases, including *LaRue,* that the Twenty-first Amendment lends an added presumption in favor of otherwise-protected speech regulation in connection with the sale of alcoholic beverages, the Court observed that "[e]ntirely apart from the Twenty-first Amendment, *the State has ample power to prohibit the sale of alcoholic beverages in inappropriate locations.*" *44 Liquormart Inc. v. Rhode Island,* 517 U.S. 484, 515, 116 S.Ct. 1495, 1514, 134 L.Ed.2d 711, 735 (1996). (Emphasis added.)

of communication). Although the time, place or manner test was initially created "for evaluating restrictions on expression taking place on public property which has been dedicated as a 'public forum,'" the test has also been applied to conduct occurring on private property. *Barnes*, 501 U.S. at 566, 111 S.Ct. at 2460, 115 L.Ed.2d at 511.

 Intermediate scrutiny—when applied to symbolic conduct undertaken to communicate an idea—translates into the application of the four-part test set forth in *United States v. O'Brien*, 391 U.S. 367, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968). This test addresses the following issues: (1) whether the regulation at issue is within the government's constitutional power; (2) whether the regulation furthers an important or substantial government interest; (3) whether the governmental interest is unrelated to the suppression of free expression; and (4) whether the incidental restriction on First–Amendment freedom is no greater than is essential to the furtherance of that interest. *See id.* at 377, 88 S.Ct. at 1679, 20 L.Ed.2d at 680. Considering each of the above factors, we conclude that the town possessed the constitutional power to adopt the ordinances in this case.

 First, as discussed above, this authority stems from the state's Twenty-first Amendment power that has been delegated to the town via the 1997 amendment to § 3–7–7.3, and by the town's preexisting warrant under state law to place reasonable restrictions upon the issuance and maintenance of liquor licenses. *See Thompson*, 512 A.2d at 841. Second, the United States Supreme Court has indicated that if a regulation's purpose to protect societal order and morality is evident from its text and history, such a purpose will be deemed sufficient to uphold its validity. *See Barnes*, 501 U.S. at 569–71, 111 S.Ct. at 2462–63, 115 L.Ed.2d at 513–15 (stating that the challenged prohibition of nude dancing, regardless of the erotic message communicated, was valid to protect the

government's important interests in promoting morality). Here, the town's general intention in enacting Ordinance No. 965, as discussed during the public hearing incident to passage of this law, was "to insure that the public welfare is taken care of," through the "maint[enance of] the public health, safety and welfare."

In *Barnes*, Justice Souter wrote a concurring opinion that focused not on the governmental interest in protecting societal order and morality (which the Court determined was a substantial interest unrelated to the suppression of free expression), but rather on the "substantial" governmental interest in preventing the adverse secondary effects associated with combining nude dancing and the consumption of alcoholic beverages at liquor-serving establishments. *See Barnes*, 501 U.S. at 582, 111 S.Ct. at 2468–69, 115 L.Ed.2d at 521 (Souter, J., concurring). Other jurisdictions have similarly applied this second prong of the *O'Brien* test under a rationale of preventing the undesirable secondary effects of combining liquor consumption with public displays of nudity. *See, e.g., Triplett Grille, Inc. v. City of Akron*, 40 F.3d 129, 134 (6th Cir. 1994); *International Eateries of America, Inc. v. Broward County*, 941 F.2d 1157, 1160–61 (11th Cir.1991). As Justice Souter's concurrence recognized, combating the anticipated negative secondary effects of allowing public displays of nudity at liquor-serving establishments is a substantial governmental interest that can be the subject of content-neutral time, place, or manner restrictions.

In addressing this issue, plaintiff contends that the ordinances in question were enacted without any evidence of adverse secondary effects and, therefore, they must be viewed as content-based regulations. However, other courts addressing this subject have held that municipalities can look to "the experience of other cities, studies done in other cities, case law reciting findings on the issue, as well as their own wisdom and common sense," *Sammy's*

*of Mobile, Ltd. v. City of Mobile,* 140 F.3d 993, 997 (11th Cir.1998), in ascertaining whether such an ordinance will serve substantial or important governmental interests. Indeed, the Supreme Court itself has noted that " '[c]ommon sense indicates that any form of nudity coupled with alcohol in a public place begets undesirable behavior.' " *Bellanca,* 452 U.S. at 718, 101 S.Ct. at 2601, 69 L.Ed.2d at 361 (quoting with approval the purposes of a similar New York statute that were set forth in an accompanying legislative memorandum, *see New York State Legislative Annual* 150 (1977)). And as recently as 1998 we stated that "[i]n determining whether there are undesirable 'secondary effects' of adult entertainment the [municipality] 'was not required' to conduct new studies or produce evidence independent of that already generated by other cities, so long as whatever evidence the [town] relies upon is reasonably believed to be relevant to the problem that the city addresses." *DiRaimo v. City of Providence,* 714 A.2d 554, 563 (R.I.1998) (quoting *Renton,* 475 U.S. at 51–52, 106 S.Ct. at 931, 89 L.Ed.2d at 40).

■■ In this case, the town council conducted a public hearing before adopting Ordinance No. 965 at which it addressed not only the adverse secondary effects of combining displays of nudity at liquor-serving establishments, but also the impact of this activity upon societal order and morality in the community. In particular, the town council's hearing began with the introduction of a letter written to the town's mayor by a business owner situated next to another nude-dancing nightclub that was similar to plaintiff's operation. The author was a business owner who opposed the topless dancing occurring at that establishment, stating that "my complex * * * is one of the upscale buildings in the [town]; and having something like this going on at such a close proximity or, for that matter at all, is untolerable [*sic* ]." Another member of the public also voiced her support for the proposed ordinance and expressed similar disapproval of such establishments. Each of these testimonial statements from town residents and constituents indicated that the proposed ordinance would, at least in the opinion of the authors, tend to promote the "societal order and morality" referred to in *Barnes.* More importantly, however, were the statements presented to the town council that—

"other councils have found that the reason they could [regulate the display of nudity where alcohol is sold] was that the combination of nude dancing and alcohol *increased criminal activity and disturbances of the peace and good order in those communities. And courts have held that those are proper concerns of the Council's and, as such, those qualify as permissible motives for the enactment of this type of ordinance.* I believe that this Council states as part of the legislative history as to the reason why this is done, this ordinance is being enacted, that it is a proper role of this Town Council *to insure that the public welfare is taken care of.* * * * And again, I would ask this Council to enact this to give us the tools to do what the good citizens of Johnston want us to do, what the businessmen are asking, what the people who live in the Town are asking, * * * I believe the enactment of this ordinance will do that and *it will show that the Town of Johnston is serious about maintaining the public health, safety and welfare.*" (Emphases added.)

Thus, the public hearing on this ordinance contains evidentiary support for the proposition that Ordinance No. 965 was enacted to promote societal order and morality in the town. The town council also learned that other municipalities had addressed this issue in a similar fashion and that various court rulings had upheld similar attempts to rectify the undesired secondary effects of mixing nudity and liquor consumption at the same locations. Furthermore, we *do not believe* that a municipality must first experience for itself the

potential adverse effects of allowing displays of nudity at local liquor-serving nightclubs before it can act to preclude these establishments from serving up such a potentially volatile cocktail. We hold that because the town council's manifest goal in enacting this ordinance was to protect societal order and morality and to ameliorate the anticipated adverse effects from allowing public displays of nudity to occur at commercial establishments where liquor is served and consumed, a proper purpose for passing this law was sufficiently evident to uphold its validity. And even though we venture no views on the morality or desirability of a municipality allowing or prohibiting nude dancing at establishments that serve liquor, the town, we hold, could rationally conclude that prohibiting nude dancing and other displays of nudity from occurring at the same commercial locations in the town that serve liquor would serve to increase the overall safety and welfare of the local community and its citizens, reduce crime in those areas, and thereby promote societal order and morality.[9]

■ The third requirement of the *O'Brien* test is that the governmental interest must be unrelated to the suppression of free expression. As we have previously concluded, the town's intention in promulgating this regulation was unrelated to whatever minimal free-speech interest might be advanced by allowing displays of nudity at establishments that serve liquor. And even though the ordinance prohibits nude displays at liquor-serving establishments, it does not outlaw nude dancing altogether in the town; rather, it is prohibited only at commercial establishments that serve liquor. By prohibiting nude dancing *only* in places that serve alcohol, the town is seeking to preserve and protect the public health, welfare, and morals of its citizenry in a manner that is unrelated to whatever free-speech interests may be advanced by allowing nude dancing to occur at such locations. Indeed, those persons in the town who desire to partake of whatever free-speech frisson may be experienced by permitting, engaging in, or viewing such displays of nudity are not barred by this ordinance from doing so at other commercial locations. Rather, they simply are prevented from doing it at commercial establishments within the town where alcoholic beverages are consumed or sold for consumption on the premises.

■ Finally, any incidental restriction on free-speech interests caused by enforcing Ordinances No. 965 and No. 1057 is outweighed by the town's legitimate interest in protecting the safety and welfare of its citizens. This type of time, place, and manner restriction on minimally protected First–Amendment activity is appropriately limited to what is needed to achieve the local government's legitimate interest in avoiding the undesired secondary effects of mixing alcohol consumption with displays of nudity at commercial establishments.

### Conclusion

In sum, Ordinances No. 965 and No. 1057 not only were validly enacted under

9. Such a rationale has been upheld by both the Federal District Court for the District of Rhode Island, as well as by the Rhode Island Superior Court. In *Wreck Bar, Inc. v. Comolli*, 857 F.Supp. 182 (D.R.I.1994), the District Court for the District of Rhode Island upheld a virtually identical ordinance that had been adopted by the Town of Westerly. Although decided prior to *44 Liquormart*, the Federal District Court's First Amendment analysis was unaffected by the removal of the Twenty-first Amendment "make-weight." In *Comolli*, the District Court stated that: "all that is required is a reasonable basis for concluding that topless barroom dancing implicates public safety concerns and that the regulation rationally addresses those concerns." *Id.* at 190. We also believe that the ordinances in question here satisfy this reasonable-basis test. See also *State v. Chiello*, 1995 WL 941448, slip op. at *5–*6 (R.I.Super.) (1995) (affirming the validity of an identical ordinance in the Town of West Warwick, and holding that the city council's findings that the combination of alcohol and nude dancing contribute to " 'criminal activity * * * and disturbances of the peace and good order of the community' * * * [were] permissible motives for the enactment of the ordinance").

applicable state law, but they also pass muster under the Federal Constitution. Accordingly, we deny the plaintiff's appeal and affirm the Superior Court's entry of summary judgment in favor of the town.

### APPENDIX

On or about February 12, 1996, the Johnston Town Council passed Ordinance No. 965. This ordinance was adopted a second time at a recessed meeting of January 13, 1997 held on January 14, 1997. Ordinance No. 965 provided as follows:

"Johnston Ordinance No. 965

### THE TOWN COUNCIL OF THE TOWN OF JOHNSTON HEREBY ORDAINS:

A. It shall be unlawful for any person maintaining, owning, or operating a commercial establishment located within the Town of Johnston at which alcoholic beverages are consumed or are offered for sale for consumption on the premises to suffer or permit:

1. Any female person, while on the premises of the commercial establishment, to expose to the public view that area of the female breast at or below the areola thereof.

2. Any female person, while on the premises of the commercial establishment to employ any devise or covering which is intended to give the appearance of or simulate such portions of the female breast as described in subsection A.1. above.

3. Any person, while on the premises of the commercial establishment, to expose to the public view his or her genitals, pubic area, anus, anal cleavage, or anal cleft.

4. Any person, while on the premises of the commercial establishment, to employ any devise or covering which is intended to give the appearance of or simulate the genitals, pubic area, anus, anal cleavage, or anal cleft.

B. It shall be unlawful for any female person, while on the premises of a commercial establishment located within the Town of Johnston at which alcoholic beverages are consumed or are offered for sale for consumption on the premises, to expose to the public view that area of the female breast at or below the areola thereof or to employ any devise or covering which is intended to give the appearance of or simulate such portions of the female breast as described herein.

C. It shall be unlawful for any person, while on the premises of a commercial establishment located within the Town of Johnston at which alcoholic beverages are consumed or are offered for sale for consumption on the premises, to expose to the public view his or her genitals, pubic area, anus, anal cleavage, or anal cleft, or to employ any devise or covering which is intended to give the appearance of or simulate the genitals, pubic area, anus, anal cleavage, or anal cleft.

D. A violation of said ordinance by the owner or operator of business licensed to sell alcoholic beverages shall be punishable by a fine not to exceed ($500.00) for the first offense and/or the suspension or revocation of said liquor license. Any subsequent violation within three years after a conviction for the same or similar violation shall be punishable by a fine not to exceed ($1,000.00) and/or the suspension or revocation of said liquor license.

E. A violation of this ordinance by a person other than an owner or operator of the licensed premises shall be punishable by a fine not to exceed ($500) for the first offense and by a fine not to exceed $1,000 for any subsequent violation within three (3) years after a conviction for the same or similar violation.

F. The invalidity of any section or sections of this ordinance shall not affect the validity of the remainder of the ordinance.

This ordinance shall take effect upon passage and all ordinances and parts of ordinances inconsistent herewith are hereby repealed." (See Transcript of Johnston Town Council dated February 12, 1996).