**SOUTHLAND CORPORATION et al.**

v.

**CITY OF WARWICK et al.**

No. 82–50–M.P.

Supreme Court of Rhode Island.

Jan. 23, 1985.

James Purcell/Stephen A. Lichatin, III, Tillinghast, Collins & Graham, Providence, for plaintiffs.

David D. Prior, Warwick, for defendants.

## OPINION

MURRAY, Justice.

This case comes before us on our grant of certiorari to review a decision of the Board of Public Safety of the City of Warwick (hereinafter the board) restricting the hours of operation of a 7-Eleven store located in that city. The petitioners, Southland Corporation and Akhtar Kadir, respectively franchisor and franchisee, challenge

the authority of the board to regulate their hours of operation. In the alternative, they argue that the board lacked the legal prerequisites and factual basis necessary to support its order.

The 7-Eleven store which was the subject of the board's action has been in operation at its present location for some fourteen years. Mr. Kadir has been franchisee and primary operator of the store since September 16, 1980. When Mr. Kadir took over operation of the store, its hours were 5 a.m. to midnight. In March 1981, however, Mr. Kadir applied for and was granted a twenty-four-hour second-class victualer's license. That license was renewed in September 1981, but in November 1981 Mr. Kadir received notice to appear before the board to show cause why his twenty-four-hour victualer's license should not be suspended. A hearing was held on November 25, 1981 and a decision was reached. That decision was later voided by agreement and a second hearing was held on January 13, 1982. On January 27, 1982 a decision was rendered in the form of a resolution unanimously adopted by the board.

The board's resolution contained a summary of the evidence presented,[1] findings of fact, a decision, and the reasons for that decision. The board found that the 7-Eleven store was the source of "serious neighborhood problems" that included excessive noise during the late-night hours, litter, and the presence of loiterers throughout the night. In the board's opinion, petitioners' operation, which offers groceries, convenience items, ready-to-eat foods, and electronic amusement devices, constituted an overtaxing of the premises. Any problems caused by this overtaxing were only exacerbated by the store's all-night hours. The board thus limited petitioners' license to the hours 6 a.m. to midnight.

The board rested its authority to license the 7-Eleven store, and thus to limit the effective hours of that license, upon G.L. 1956 (1976 Reenactment) § 5-24-1(a), which provides that

"[t]he town council of every town and the city council of every city shall have the power to regulate, including the setting of hours of operation, the keeping of taverns, victualing houses, cookshops, oyster houses and oyster cellars therein, by granting licenses therefor * * * or by refusing to grant them, provided, however * * * all licenses issued pursuant to this section shall entitle the holder thereof to operate continuously after 6:00 a.m. but not after 2:00 a.m."

The petitioners first argue that the above provision does not apply to the 7-Eleven store in question because it is not a "victualing house." Thus, the board has no authority to license it, or to insist upon a license, or to limit the hours of its operation. The board counters petitioners' jurisdictional argument by urging that petitioners have waived such an argument by voluntarily seeking a license and by subjecting themselves to the jurisdiction of the board at the January 13 hearing. We find no merit in this argument. The power to regulate businesses through licensing is an attribute of sovereignty, and may be exercised by a municipality only upon an express or implied delegation of this power from the state. *Nugent v. City of East Providence*, 103 R.I. 518, 523, 238 A.2d 758, 761 (1968). The city of Warwick can only exercise such licensing powers as are properly within its authority as granted by the General Assembly. *Id.* Moreover, petitioners' initial argument at the January 13 hearing concerned the jurisdiction of the board. *Cf., Caldarone v. Zoning Board of Review of Warwick*, 74 R.I. 196, 198, 60 A.2d 158, 159 (1948) (licensee failed to raise

1. Because of technical difficulties with its recording device, there is no transcript of the January 27 hearing before the board. The peti-

tioners have agreed, however, that there is no significant factual dispute.

jurisdictional issue at hearing). Although either a declaratory-judgment action by petitioners or a defense to the city's action for enforcement of the resolution would also have been a proper vehicle for petitioners' jurisdictional argument, the present action is also an appropriate proceeding within which to articulate such an argument.

Section 5–24–1 allows the city to grant, or not to grant, a victualer's license. The petitioners argue that such a license is unnecessary because the 7-Eleven store is not a "victualing house" within the meaning of that section. Unfortunately, the statute does not provide a definition of that term. Black's Law Dictionary, 1739 (4th Ed.1968), defines "victuals" as "[f]ood ready to eat," and "victualler" as "[o]ne who serves food or drink prepared for consumption on the premises." We think that the question of whether a particular establishment is a "victualing house" is a factual one. When presented with this factual question, the board answered in the affirmative. We can find no reason to disagree with that finding.

There is no dispute that petitioners served "food ready to eat," and that at least some of this food was prepared on the premises. The store prepared coffee for sale by the cup. It also prepared and served an iced soft drink. It made available to customers a microwave oven that could be used to heat sandwiches and other foods purchased on the premises. It also sold candy, doughnuts, soda, and various other prepackaged and ready-to-eat foods. Testimony from Mr. Kadir and representatives from Southland Corporation indicated that between 7 and 20 percent of the store's revenues were generated by the sale of the items listed above. Given this evidence, the board could justifiably find that the 7-Eleven store was a "victualing house" and subject to regulation under § 5–24–1(a).

Much of the petitioners' argument has centered upon their contention that the food prepared on the premises was not for consumption on the premises. They urge that there was no space for consumption of food on the premises and that such consumption was in fact prohibited by the store's management. We believe that the factual findings of the board belie such an argument. The late-night noise and loitering in and around the store clearly resulted from patrons who made purchases of food or drink and subsequently consumed these items in the parking lot. Although there was no formal dining area, it cannot seriously be disputed that a large part of the store's late-night business consisted of the sale of ready-to-eat foods and that these foods were consumed on the premises.

The petitioners' argue in the alternative that the board had no authority to limit their license except between the hours of 2 a.m. and 6 a.m. Section 5–24–1(a) grants each city "the power to regulate, *including the setting of hours of operation,* the keeping of * * * victualing houses, * * * provided, however * * * *all licenses issued pursuant to this section shall entitle the holder thereof to operate continuously after 6:00 a.m. but not after 2:00 a.m.*" (Emphasis added.) We think the clear meaning of this section entitles a licensee to operate between the hours of 6 a.m. and 2 a.m. Thus, insofar as the board's resolution restricts the victualing activities of the petitioners during these hours, it is in excess of legislative authority.

The board's order is modified to allow the petitioners to conduct victualing activities from 6 a.m. to 2 a.m. and affirmed in all other aspects.