Brian L. THOMPSON d/b/a The Speakeasy Lounge

v.

TOWN OF EAST GREENWICH et al.

No. 85–108–M.P.

Supreme Court of Rhode Island.

July 11, 1986.

James Marusak, Providence, for petitioner/defendant.

Brian Thompson, pro se.

## OPINION

MURRAY, Justice.

The town of East Greenwich (town) and the Board of Licensing Commissioners of the Town of East Greenwich (board), defendants, have petitioned this court pursuant to a common-law writ of certiorari to review a Superior Court decision that reversed a ruling of the liquor control administrator and entered a judgment in favor of Brian L. Thompson (Thompson), plaintiff.[1]

---

1. The record indicates that defendants initially appealed to this court seeking relief. Procedurally speaking, review of the Superior Court decision herein can only be obtained by a petition for a statutory writ of certiorari filed pursuant to the Administrative Procedures Act, G.L.1956 (1984 Reenactment) § 42–35–16. This statute requires that such a petition be filed within twenty days from the date of the entry of judg-ment in the Superior Court. On February 6, 1985, defendants appeared before us to show cause why their appeal should not be dismissed for failing to properly petition this court in accordance with § 42–35–16. Realizing that defendants could not utilize § 42–35–16 because the twenty-day time limit had expired, we denied and dismissed defendants' appeal without

The issues before us are predicated on the following facts.

According to the record, in 1979 the town's liquor-licensing commissioners issued to Thompson a class-B retail liquor license for the premises located at 2725 South County Trail in East Greenwich. At this particular location Thompson operates an establishment known as the Speakeasy Lounge (lounge). On December 1, 1980, Thompson secured a renewal of his license from the town. As a prerequisite to obtaining his renewed license, Thompson agreed in writing to abide by a set of conditions that the town had formally adopted on November 12, 1980. With respect to instant action before us, the following conditions are in issue:

"5. All patrons shall leave the licensed premises within 30 minutes after the legal closing hour.

"6. Management and bona fide employees may remain on the premises for a period of no longer than one hour after the legal closing hour or, specifically, management and bona fide employees of Class B and D establishments must be out of the establishment by 2:00 A.M.; Class C by 1:00 A.M. Management and bona fide employees may not consume alcoholic beverages after patrons have left the premises."

On February 22, 1981, at approximately 2:40 a.m. the Rhode Island State Police, while on routine patrol, observed three cars parked outside the lounge. After disembarking from their vehicle, the police noticed that the lights were on inside the building and that loud music was emanating from its interior. Both officers approached the entrance, and one of them knocked on the door. Immediately thereafter, the music stopped and the lights were turned off. A few minutes later Lawrence J. Tibbets (Tibbets), the assistant manager of the bar, opened the door and informed the police that he was the only one inside. Notwithstanding Tibbets' representations, the police entered the lounge

and conducted a search. During the course of their investigation they observed on one of the tables two coats, two woman's purses, and a set of keys. In addition a pair of woman's shoes were situated underneath that same table. When the police inquired who owned these personal effects, Tibbets explained that the items had been left behind by some patrons who had called to inform him that they would pick up their belongings later. Despite Tibbets' assertion the officers remained suspicious of the situation. Subsequently the police checked all the rooms in the lounge, except the rear office, the door of which upon their initial investigation appeared to be locked. The police requested Tibbets to open the door, but he claimed that he did not have a key. One of the officers then proceeded to the door and pushed on it with his arm. Initially the door opened a foot or so, but it then began to close as if someone, according to the officer's testimony, was pushing back from the other side. At this juncture the officer ordered whoever was in the office to come out, whereupon Thompson and two female patrons emerged from the darkened room. Thompson immediately identified himself as the owner of the lounge, while the two women went to the purses at the aforementioned table in order to obtain the necessary identification requested by the police. Thereafter the police ordered Thompson to close the lounge immediately and instructed everyone else to leave the premises. Thompson was also advised by the police that a report of this incident would be forwarded to the Alcoholic Beverage Commission of the State of Rhode Island and the East Greenwich Town Council.

The record before us indicates that the above incident at the lounge on February 22, 1981, was not an isolated event. On at least three previous occasions, both state and local police had discovered patrons and employees in the bar at times beyond the limits imposed by the town. In at least two instances drinks were observed by police in and around the bar area. As a result of

prejudice so that they could file a petition for a writ of common-law certiorari.

these persistent violations, Thompson had been personally warned by the town's chief of police, John A. Murray (Murray), either to abide by the closing conditions or to suffer the consequences. Apparently, the incident of February 22, 1981, convinced Murray that his warnings had been disregarded by Thompson. Consequently, on March 2, 1981, Murray sent a letter to the East Greenwich Town Council recommending that some action be taken against Thompson.

Accordingly, on March 17, 1981, Thompson was summoned to appear before the board and to show cause why his license should not be revoked or suspended.[2] Subsequently a hearing was held regarding the matter on April 14, 1981. After considering all the evidence before it, including the testimony of seven witnesses, the board rendered a decision on April 30, 1981, in which it determined that Thompson had violated condition Nos. 5 and 6 of his license renewal as set forth above.[3] In accordance with its authority under G.L.1956 (1976 Reenactment) § 3–5–21, therefore, the board suspended Thompson's license for a period of seven days.

Several hours after the imposition of the suspension on May 1, 1981, at approximately 2:23 a.m., Thompson and two employees were again found at the lounge, this time by the East Greenwich police. As a result the board held a second hearing involving Thompson and his license on May 28, 1981. At the conclusion of the proceeding, the board found that Thompson had violated condition No. 6 of the town's guidelines. Pursuant to this determination the board suspended Thompson's license for an additional seven days. Afterward, Thompson appealed both suspensions to the liquor control administrator (administrator).

On June 8, 1981, a hearing was held before the administrator, who reaffirmed both suspensions.[4] Unsatisfied with this adjudication, Thompson sought relief in the Superior Court.

The trial judge, after reviewing the evidence before him, determined that there was "ample evidence" to support a finding that Thompson clearly violated the conditions attached to the license renewal by the town. He also found in examining the language of § 3–5–21 "that there is a clear implication in [the] statute that a municipality may attach some conditions to the issuance of a liquor license." Despite these determinations, the trial judge concluded that there were no legal grounds for the suspensions in this case because the conditions promulgated by the town were invalid. Citing to the specific conditions in issue, the trial judge claimed that "[n]owhere in the law is there an express delegation of power [by the General Assembly] to local authorities to enact and promulgate conditions of this kind [upon] the issuance of a liquor license." Although the trial judge agreed with defendants' argument that municipalities have an implicit power under § 3–5–21 to impose conditions on a liquor license, he concluded that the General Assembly's delegation of that power can only

---

2. At the hearing before the administrator, Norma A. Mahoney, the town clerk for East Greenwich, testified that a similar set of conditions with the exact same closing restrictions had been in effect since 1979. According to the record, two of Thompson's three previous violations of the closing-time conditions, as mentioned in the text above, occurred prior to his license renewal on December 1, 1980. Apparently, in renewing Thompson's license despite these violations, the town decided to provide him with one more opportunity to abide by its closing conditions. His subsequent failure to do so on February 22, 1981, left the town with no alternative but to institute suspension proceedings against him.

3. The board also found Thompson in violation of condition No. 1 of his license renewal and G.L.1956 (1976 Reenactment) § 3–5–18, both of which require him to post his license in plain view.

4. Although the administrator affirmed both suspensions, he reversed the board's ruling that Thompson had violated condition No. 1 of his license renewal and § 3–5–18, note 3, *supra,* asserting that there was insufficient evidence to uphold those particular violations.

be valid if it is subject to some accompanying standards or guidelines. Since, however, the trial judge found that "there is no statement in the law anywhere [by the Legislature] as to what kind of conditions the local community may attach," he clearly regarded the town's implicit legislatively conferred power under § 3–5–21 to be unconditional and void. As a result the trial judge determined that the town's specific conditions adopted pursuant to that implicit power are invalid and nonbinding. Hence, basing his finding upon the above reasoning, the trial judge reversed the suspensions and entered judgment for plaintiff. In response to this adjudication, the town and the board petitioned this court pursuant to a writ of certiorari to review the trial judge's decision. On May 31, 1985, we granted defendants' petition and assigned the case to the oral-argument calendar.

Focusing upon the merits of this case, we are mindful that this court's review by certiorari of the judgment rendered by the trial judge is limited. *G. H. Waterman & Co. v. Norberg,* 122 R.I. 825, 828, 412 A.2d 1132, 1134 (1980). Our task in deciding whether the trial judge misconstrued the statute is to examine the record to determine whether any competent evidence exists to support the decision and whether the decision is affected by any errors of law. *Randall v. Norberg,* 121 R.I. 714, 717, 403 A.2d 240, 242 (1979). In conjunction with the aforementioned precept, since we are confronted in this matter with a question of statutory interpretation, this court's duty in construing a statute is to ascertain the intent behind its enactment and to effectuate that intent whenever it is possible and within the competence of the Legislature. *Dunne Leases Cars & Trucks, Inc. v. Kenworth Truck Co.,* 466 A.2d 1153, 1156 (R.I. 1983). In order to determine the legislative intent, we examine the language, nature, and object of the statute. *Howard Union of Teachers v. State of Rhode Island,* 478 A.2d 563, 565 (R.I.1984).

The focal point of controversy in this action is § 3–5–21, which is set forth in full as follows:

"Revocation or suspension of licenses.—Every license shall be subject to revocation or suspension by the board, body or official issuing the same, or by said department of its own motion, for breach by the holder thereof of the conditions on which it was issued or for violation by the holder thereof of any rule or regulation applicable thereto or for breach of any provisions of this title."[5]

With respect to the above statute, we note that the power to regulate businesses through licensing is an attribute of sovereignty, and may be exercised by a municipality only upon an express or implied delegation of this power. *Southland Corp. v. City of Warwick,* 486 A.2d 610, 611 (R.I. 1985). According to § 3–5–15, the General Assembly has delegated to "the town councils or license boards of the several towns" the full and plenary power to issue, inter alia, class-B liquor licenses. This authority to issue such licenses is logically and appropriately complemented by § 3–5–21, which legislatively empowers these same governing bodies to revoke or suspend a liquor license for breach of any conditions upon which it was issued. From a review of the language in § 3–5–21, it is our considered judgment that the Legislature intended in conferring the power to revoke or suspend to implicitly authorize municipalities to attach conditions to the issuance of liquor licenses. If such an implication is not read into the statute, the power to revoke or suspend becomes a nullity since there is no basis upon which it can be exercised. *Gott v. Norberg,* 417 A.2d 1352, 1356–57 (R.I. 1980). This court has consistently stated that we shall not construe a statute in a way that would " 'attribute to the Legislature an intent that would result in absurdities or would defeat the underlying pur-

---

**5.** Section 3–5–21 has recently been amended by P.L.1985, ch. 393, § 1. The changes effectuated by this particular amendment, however, have no bearing upon the issues before us in the instant action.

pose of legislation.'" *City of Warwick v. Aptt,* 497 A.2d 721, 724 (R.I.1985). We also note that "[s]tatutory provisions are ordinarily broadened on the principle of necessary implication only where the absence of some provision would render impossible the accomplishment of the clear purposes of the legislation." *New England Die Co. v. General Products Co.,* 92 R.I. 292, 298, 168 A.2d 150, 153 (1961). Accordingly, we find that in order to effectuate the legislative intent behind § 3–5–21, the statute must necessarily be construed to imply that municipalities have the authority to impose conditions upon the issuance of a liquor license.

■ Significantly, the trial judge acknowledged that there is a "clear implication" in § 3–5–21 that a municipality may attach some conditions to the issuance of liquor licenses. Nevertheless, he opined that the absence of any guidelines or standards governing what types of conditions a municipal licensor may impose under § 3–5–21 constitutes an unconditional delegation of legislative power by the General Assembly. As a result the trial judge found the specific closing-time conditions promulgated by the town in accordance with § 3–5–21 to be invalid. Another consequence of the trial judge's decision, although he failed to mention it, is that by ruling as he did, he effectively brought into issue the constitutionality of the General Assembly's delegation of its power to the municipalities to impose conditions under § 3–5–21. It is well settled in this jurisdiction that any unconditional delegation of the General Assembly's legislative power is unconstitutional and void. *City of Warwick v. Warwick Regular Firemen's Association,* 106 R.I. 109, 113, 256 A.2d 206, 209 (1969). This nondelegation doctrine, however, is not to be construed as prohibiting entirely the delegation of legislative power. *State v. Peloquin,* 427 A.2d 1327, 1330 (R.I.1981). Rather this doctrine prohibits only *unreasonable delegations of legislative power. Jennings v. Exeter-West Greenwich Regional School District Committee,* 116 R.I. 90, 97, 352 A.2d 634, 638

(1976). This court subscribes to the view, therefore, that the General Assembly's delegation of its legislative power will be deemed reasonable and lawful if it is limited by standards sufficient to confine the exercise of that power for the purpose for which the delegation was made. *DePetrillo v. Coffey,* 118 R.I. 519, 523, 376 A.2d 317, 319 (1977).

■ Apparently the trial judge expressed a great deal of concern over the prospect that licensing boards and towns would utilize their allegedly unbridled powers under § 3–5–21 to impose unfair and absurd conditions upon the holders of liquor licenses. Without digressing to any great length, we find the language in § 3–1–5 to be dispositive of this matter:

"Liberal construction of title.—This title shall be construed liberally in aid of its declared purpose which declared purpose is the promotion of temperance and for the reasonable control of the traffic in alcoholic beverages."

Clearly the language of § 3–1–5 mandates that our construction of § 3–5–21 be in accordance with the declared purpose of title 3. In effect § 3–1–5 therefore restricts the power of the towns and licensing boards to impose conditions under § 3–5–21 to those which promote the *"reasonable control of * * * alcoholic beverages."* (Emphasis added.) Succinctly stated, § 3–1–5 requires that any conditions that a municipality may choose to enforce upon the issuance of a liquor license *must be reasonable.* Accordingly we find that the language of § 3–1–5 constitutes a sufficient limitation upon the authority of towns and licensing boards under § 3–5–21 to attach conditions to a liquor license. *Dean v. Zoning Board of Review of Warwick,* 120 R.I. 825, 829, 390 A.2d 382, 385 (1978). As a result the General Assembly's implied delegation of its power to municipalities concerning the imposition of conditions upon liquor licenses under § 3–5–21 is both reasonable and lawful. *State v. Peloquin,* 427 A.2d at 1330. From this conclusion it

logically follows that the town's action in promulgating and imposing conditions pursuant to § 3–5–21 was an indisputably valid and legal exercise of that power. Relying upon our above analysis, therefore, we find that the trial judge committed an error of law in ruling that the town's conditions attached to plaintiff's license renewal were invalid.

 Finally, in applying the aforementioned reasonableness standard to the facts of this action, we hold that the town's specific conditions regulating the closing time of a liquor licensee's establishment are both reasonable and in accordance with the declared purpose of title 3. Section 3–7–7 states that holders of a class-B liquor license may not serve or sell any beverages after 1 a.m., the legal closing hour in Rhode Island. Condition No. 5, as adopted by the town, requires that all patrons must be off the premises by 1:30 a.m., while condition No. 6 directs all employees to leave by 2 a.m. These conditions provide reasonable and ample time for the patrons to vacate the premises and for the employees to complete closing procedures.[6] There is no question that these conditions promote the declared purpose of title 3 as outlined in § 3–1–5. Accordingly, since we have determined that the town's imposition of these conditions is both lawful and reasonable, the plaintiff's persistence in violating them provided overwhelming justification for the board to issue the suspensions against him.

Predicated upon the above reasoning and authorities, the defendants' petition is granted. The judgment of the Superior Court is quashed, and the papers are re-

manded to the Superior Court with our decision endorsed thereon.

---

6. In further support of our determination that the above conditions are reasonable, we note that the time limitations pertaining to the owner and his employees under condition No. 6 are not entirely inflexible. According to the testimony of Chief of Police Murray, if a licensee and/or his employees have to remain on the premises beyond 2 a.m., he is only required to contact the police department and request approval for an extension of time. Normally, such requests are granted if there is a bona fide purpose for remaining at the establishment, such as cleaning the premises or repairing equipment. The evidence produced before the administrator indicated that Thompson was aware of this extension procedure and that he had utilized it on a few occasions. However, with respect to the instances during which Thompson and others were discovered at the lounge after hours, on both February 22, 1981, and May 1, 1981, no record of a phone call from him could be found for those dates in the log book of the town's police dispatcher.