DECISION
The Town of East Greenwich has enacted an ordinance which regulates smoking in restaurants and bars. Ordinance 686 prohibits smoking in town-licensed facilities or in the alternative requires license holders to provide separate, enclosed smoking areas wherein no one under the age of I8 years may be served. Bars are exempt from the restrictions, provided no customer under the age of 21 years is permitted on the premises.
This Court has been asked to decide whether the Town of East Greenwich has the authority to impose these conditions on the holders of liquor and/or victualing licenses. The Court finds that the town does have such authority.
 1. Background.
The Court summarizes the pertinent facts and travel of the instant controversy. On April 25, 2000, the Town Council of the Town of East Greenwich adopted an ordinance which regulates smoking in restaurants and bars. On October 26, 2000, the ordinance was amended to modify the enforcement provisions contained therein. The ordinance effects 67 holders of victualing licenses, several of whom are also licensed to serve liquor. Ordinance 686, provides in pertinent part:
 ARTICLE VII. SMOKING Sec. 10-300 Findings.
 This is an ordinance intended to reduce exposure to tobacco smoke and create clean indoor air which will ultimately protect the health and welfare of the people at licensed eating establishments in East Greenwich. The East Greenwich Town Council makes the following findings.
 Tobacco smoke is hazardous to the health of children. The Rhode Island Department of Health has issued a Health Alert strongly recommending that parent do not take children to restaurants that allow smoking.
 Secondhand smoke is a mixture of the stocks given off by the burning end of a cigarette, pipe. or cigar, and the snake exhaled from the lungs of smokers. This mixture contains more than 4,000 substances, more than 40 of which are known to cause cancer in humans.
 Secondhand smoke has been classified by the U.S. Environmental Protection Agency (EPA) as a known cause of lung cancer in humans (Group A carcinogen). Secondhand snake is estimated by EPA to cause approximately 3,000 lung cancer deaths in nonsmokers each year. It is widely known that secondhand smoke causes respiratory effects in children. Even the tobacco industry does not contest these effects in its media and public relations campaign.
 Tragically; according to the Journal of the American Medical Association (1/98), an estimated 53,000 deaths occur nationally each year as a result of inhaling secondhand smoke....
 The East Greenwich Town Council recognizes the enormous health threat resulting from inhaling secondhand smoke. It is therefore the intent of the Council to impose conditions on its licenses that help to ameliorate the dining experience for non-smokers in those licensed premises where smoking is allowed. The Council is especially cognizant of the potential risk secondhand smoke has for children...
 Sec. 10-302 Smoking in Restaurants
 The Town of East Greenwich enacts the flowing measures in insure that all residents and patrons dining at East Greenwich restaurants be given the opportunity to eat in an area free of secondhand smoke. These measures have been established to ensure health and safety fir all, as well as respecting choices made by those 18 and over.
 East Greenwich licensed restaurants must operate in one of the following two options:
 (1) the entire restaurant completely smoke free or
 (2) provide a separate, enclosed smoking area. No one under 18 years of age may be served in a smoking area of the restaurant.
 Bars shall be exempt providing no customer under the age of 21 years is permitted on the premises.
 In the event of a violation of any provision of this Ordinance, any license holder and/or individual in charge of the licensed establishment at the time of the violation will be subject to the below mentioned sanctions which are to be imposed by the Town Council after hearing thereon:
 First Offense — Mandatory attendance at a tobacco education session conducted by the Town's Drug Program Coordinator and a written reprimand.
 Second Offense — Mandatory attendance at a tobacco education session conducted by the Town's Drug Program Coordinator and a license suspension.
 Third Offense — License suspension or revocation.
On June 6, 2000, Plaintiffs, twelve licensed East Greenwich restaurants and bars and the Rhode Island Hospitality and Tourism Association, filed the instant complaint for Declaratory Judgment and Injunctive Relief. Plaintiffs seek a ruling by this Court that East Greenwich Ordinance 686 is null and void.
Defendants include the members of the Town Council and Board of Licenses, the Finance Director and the Town Manager.
Ordinance 686 became effective upon passage. However, license holders initially were permitted until December 1, 2000 to comply "with the smoke-free area enclosure requirements. The town subsequently delayed implementation of the ordinance until March 1, 2001.
This matter is before the Court on cross-motions for summary judgment. After Plaintiffs filed their motion, the Court issued an order staying enforcement of the ordinance an additional 19 days. Defendants have since filed a cross-motion. Both parties agree that there are no genuine issues of material fact in dispute and that the issue before the Court is one of law, not fact.
The Court previously granted the petition of the American Cancer Society to participate as Amicus Curiae in the pending action. In connection therewith, the American Cancer Society has submitted a memorandum in opposition to Plaintiffs' motion for summary judgment, but has not presented oral argument.
 2. Discussion.
A party seeking summary judgment must show "... that there is no genuine issue as to any material fact and that the moveant is entitled to judgment as a matter of law." R.I.Super.Ct.R.Civ. P. 56. Summary judgment is an extreme remedy and must be applied cautiously. Golderese v. Suburban Land Co., Inc., 590 A.2d 395 (R.I. 1991); Hydro-Manufacturing, Inc. v. Kayser-Roth Corp., 640 A.2d 950 (R.I. 1994). The purpose of summary judgment is issue finding, not issue determination. Saltzman v. Atlantic Realty Co., 434 A.2d 1343 (RI. 1981). If there are no material facts in dispute, then the case is ripe for summary judgment. Richard v. Blue Cross Blue Shield, 604 A.2d 1260 (R.I. 1992).
Plaintiffs base their motion on three grounds: first, that the ordinance "violates the Constitution of the State of Rhode Island; second, that the General Assembly has not delegated legislative authority to municipalities to regulate smoking in licensed facilities; and third, that state law preempts municipal ordinances on the subject matter of smoking in public places.
 a. Constitutional Law.
The legislative powers of the cities and towns are set forth in the so-called Home Rule Amendment of the Constitution of the State of Rhode Island, which provides in pertinent part as follows:
 Article XIII. HOME RULE FOR CITIES AND TOWNS
 Section 1. Intent of article. — It is the intention of this article to grant and confirm to the people of every city and town in this state the right of self government in all local matters.
 Section 2. Local legislative powers. — Every city and town shall have the power at any time to adopt a charter, amend its charter, enact and amend local laws relating to its property; affairs and government not inconsistent with this Constitution and laws enacted by the general assembly..
 Section 4. Powers of general assembly over cities and towns. — The general assembly shall have the power to act in relation to the property. affairs and government of any city or town by general laws which shall apply alike to all cities and towns, but which shall not affect the form of government of any city or town....
The Home Rule Charter of the Town of East Greenwich provides in pertinent part as follows:
 ARTICLE III. Section 3170: Powers and Duties.
 All legislative powers of the Town shall be vested in the Council (with exceptions not applicable to this dispute)...The Council may enact and amend ordinances regulating the Town's property affairs and government not inconsistent with the State Constitution and laws enacted by the General Assembly in conformity with the powers reserved to the General Assembly... Without limiting the generality of the foregoing, the Council shall have and exercise the following specific powers...
 A. To enact, amend or repeal ordinances for the preservation of the public peace, to health, safety, comfort and welfare of the inhabitant of the Town and for the protection of persons and property.
Municipalities are not permitted to legislate on matters of statewide concern. The Legislature has exclusive power in those areas. Town of East Greenwich v. O'Neil, 617 A.2d 104 (R.I. 1992) The General Assembly may not delegate legislative power to municipal authorities unconditionally, and any attempt to do so is unconstitutional and void. DePetrillo v. Coffey, 376 A.2d 317 (R.I. 1977). The nondelegation doctrine does not prohibit the delegation of legislative power entirely; rather, the doctrine prohibits unreasonable delegation of that power. Thompson v. Town of East Greenwich, 512 A.2d 837 (R.I. 1986). The power delegated to the municipalities must be limited so that the exercise of that power furthers the purposes for which the delegation is made. Id.
The Home Rule Amendment altered the traditional rule that cities and towns were creatures of the Legislature having no inherent right to self-government but deriving all of their authority and power from the Legislature. Lynch v. King, 120 R.I. 868, 391 A.2d 117 (1978). "[A]bsent a direct conflict between a local ordinance and a state statute, "the constitution and general laws are devoid of guidelines defining the parameters of local and general legislation." O'Neil, 617 A.2d at 111, 1221, 1223 (R.I. 1989). The Court must resolve conflicts between state and municipal legislation. Id.
First, the Court must determine whether uniform regulation throughout the state is necessary. If so, the matter is likely within the state's domain. Second, the Court should consider whether the ordinance addresses a subject tint is traditionally within the historical domain of either the state or local governments. Third, and most critical, the Court shall determine if the ordinance has a significant effect upon people within or outside the home rule town or city. O'Neil, 617 A.2d at 104.
 (1) Is uniform regulation throughout the state necessary?
In O'Neil, the town enacted an ordinance which created a moratorium on construction of electric transmission lines exceeding sixty kilovolts. Id. The Court concluded that public-utility regulatory policy required uniform regulation to preserve public safety and ensure efficient statewide distribution of the utility. Electrical power is generated at a single location and is distributed and used at distant places. If each municipality imposes its own restrictions on how current is transmitted through it, chaos will result. In O'Neil, the Court determined that uniform regulation throughout the state was necessary. Id. However, time facts in that case are clearly distinguishable from those in the instant matter.
In this case, a local smoking ban will not have an adverse effect on time health, comfort or safety of other communities. In that regard, the subject smoking ban is akin to the ordinance addressed by the Court in El Marocco Club, Inc. v. Richardson, 746 A.2d 1228 (R.I. 2000). In El Marocco, the Court ruled that a municipality could prohibit nude dancing in nightclubs. If statewide regulations are not required to regulate nude dancing in licensed facilities, then statewide regulations are not required to regulate smoking in similar establishments.
 (2) Does the ordinance address a subject that is traditionally within the historical domain of either entity?
Next, the Count considers whether the subject is traditionally within the historical domain of either state or municipal governments. In the case of Marro v. Cranston General Treasurer, 108 R.I. 192, 273 A.2d 660 (1971), the Court rejected a local ordinance regulating the rights of a disabled police officer to receive a pension. Citing a long line of decisions which identify the state's duty to preserve public peace and good order, the Court concluded that police officers who discharge such duties act for the inhabitants of the entire state, and as such, the state should regulate their employment and tenure.
In contrast to Marro, no line of decisions identify the state's duty to regulate smoking. The state has enacted legislation regulating smoking in public places. R.I. Gen. Law 23-20.6-1, et seq. The state also has delegated power to cities and towns to issue, suspend and revoke liquor and victualing licenses, and victualing licenses, and a line of cases uphold that authority. R.I. Gen. Law 3-5-1,, et seq.; R.I. Gen. Law 24-1, et seq.; El Marocco, 746 A.2d 1221; Thompson, 512 A.2d 837; Santos v. City Council of the City of East Providence, 99 R.I. 439, 208 A.2d 387
(1965). The particular matter addressed in this dispute, the regulation of smoking in licensed facilities, is not traditionally within the historical dominion of either entity.
 (3) Does the ordinance have a significant effect an people outside die home ride town?
Finally, the action of the municipality has a significant effect on people within the town, while they are in the town. it does not effect those beyond its borders. In this regard, it is clearly distinguishable from O'Neil, 617 A.2d 104.
Plaintiffs do not dispute the causal link between secondhand smoke and a variety of health hazards. The General Assembly has described smoking as "the leading cause of preventable death and disease in this country." and secondhand smoke as the "third leading cause of death in the United States today..." R.I. Gen. Law 23-20.9-2. The Legislature considers it increasingly dangerous, both to the smoker and the non-smoker who breathes the contaminated air. R.I. Gen. Law 23-20.6-1.
There is no question that the subject ordinance preserves and protects the public health, safety, comfort and welfare of the inhabitants of the town. As such, the enactment of the ordinance is consistent with die powers vested in the Town Council by the Home Rule Charter. It has a significant effect on the people of the home rule town.
The Court finds that the town has inherent power under the Home Rule Charter to regulate such matters of local concern. However, the subject regulations are attached as conditions to the issuance of victualing and liquor licenses. Since the power to regulate businesses through licensing is an attribute of the state, the town cannot restrict smoking in licensed facilities unless the Legislature has delegated such authority to the municipality under Title 3 and under chapter 24 of Title 5. See, Southland Corporation v. City of Warwick. 486 A.2d 610 (R.I. 1985).
 b. Delegation of Powers.
A municipality, as a creation of the state, has only such powers as the state delegates to it. DePetrillo, 376 A.2d 317. Plaintiffs assert that the powers delegated to the municipalities to issue, suspend and revoke liquor and victualing licenses do not extend to permit cities and towns to regulate smoking in licensed establishments.
Each of the establishments covered by the ordinance holds a victualing license although several hold liquor licenses as well. The Court previously has addressed the scope of the authority delegated by the Legislature to municipalities to regulate businesses where food is prepared and consumed. In Santos, 99 R.I. 439, 208 A.2d 387, the Court considered whether the city council had cause to revoke a victualing license. The health inspector visited the premises and observed unsanitary and unhealthy conditions, but he never actually observed any person eating at the restaurant. Santos argued that his license could not he revoked because the town could not prove that he bad served or prepared for service unhealthy or unsanitary food or drink. The Court rejected this argument and concluded that the General Assembly intended to confer broad power on the municipalities to regulate the operation of places for service of food and drink to the public.
 We are convinced that the public health ad welfare would be as adversely affected by dereliction in maintaining sanitary conditions within the premises as it would be by the service of impure or adulterated food products. Santos. 208 A.2d 389.
The Court distinguished Primiano v. Town Council of Town of Warren,347 A.2d 414 (R.I. 1975) from Santos. In Primiano, the town revoked a victualing license after the license holder violated the building code at a zoning ordinance. Primiano owned and operated a refreshment stand at Warren town beach and relocated the stand without obtaining the necessary permits. The Court found that R.I. Gen. Law 5-24-1[1] and R.I. Gen. Law 5-24-2[2] did not authorize a town to revoke a victualing license where there was no threat to public health. The statutes requiring licensing of restaurants regulate activity taking place on the land, whereas building and zoning regulations govern the use of the land. Primiano's violations did "...not arise from any health threat to the populace which is attributable to petitioner's conduct of her business." 347 A.2d at 416.
Plaintiffs urge the Court to accept a narrow interpretation of the holdings in Santos. 208 A.2d 389 and Primiano. 347 A.2d 414. In their reply brief, Plaintiffs suggest that Ordinance 686 does not further the declared purpose of Chapter 24 of Title 5 regardless of whether the ordinance protects public health. Plaintiffs contend that the legislative power delegated to municipalities is limited to instances where public health and welfare might be endangered from unclean premises or equipment, unsanitary conditions, or impure or adulterated food products. See, Santos, 208 A.2d 389. This Court finds that the Legislature conferred broad power to the cities and towns to ensure the health, safety and welfare of restaurant patrons. That power naturally extends to the air they breathe, whether polluted by noxious fumes emitted during food preparation, or by chemical vapors janitorial products used to clean restaurant premises and equipment, or by environmental tobacco smoke.
Since the cities and towns have express authority to grant, suspend and revoke victualing licenses, it follows that they have the authority to impose stricter controls over their local establishments than those provided for by the Legislature. In the case of Thompson, 512 A.2d 837, the Court upheld local conditions adopted by the town on holders of liquor licenses which restricted hours of operation to 30 minutes after the legal closing hour and only permitted management and employees to remain on the premises for an additional 30 minutes. These conditions were harsher than those imposed by state law. The owner of a local lounge violated the restrictions on multiple occasions, and the town revoked his liquor license.
In Thompson, the Court examined R.I (Gen. Law 3-5-15, R.I. Gen. Law3-5-21 and the statutory scheme governing the issuance of liquor licenses. The Courts "...duty in construing a statute is to ascertain the intent behind its enactment and to effectuate that intent whenever it is possible and within the competence of the Legislature." Thompson, 512 A.2d at 841 (citing 466 A.2d 1153, 1156 (R.I. 1983)). The Court concluded that R.I. Gen. Law 3-5-15 gives town councils or license beards full and plenary power to issue liquor licenses, and R.I. Gen. Law 3-5-21 gives them the authority to revoke or suspend a liquor license for a breach of the conditions upon which it was issued. In delegating such sovereign powers to the cities and towns, the Legislature implicitly intended to authorize municipalities to attach conditions on the issuance of licenses. To hold otherwise would result in absurdities or would defeat the underlying purpose of the legislation.
Plaintiffs argue that Chapter 24 of Title 5, which permits municipalities to issue victualing licenses does not reveal an intent to allow municipalities to regulate or ban smoking in licensed facilities. However, cities and towns have broad power to regulate eating facilities to the end that public interest in health and welfare would be subserved. Santos. 99 R.I. 439, 208 A.2d 387. With respect to victualing licenses, the Court has stated:
 [T]he Legislature intended to bestow upon to municipal legislative bodies broad power to regulate places catering to the needs of the public for food and drink so that to public health and welfare would not be endangered. The entire rationale for the revocation of a victualing license is the existence of a condition on the licensed premises that would imperil the public health. Primiano, 347 A.2d at 415.
Cities and towns may attach conditions to the issuance of victualing licenses so long as the conditions advance the interest of public health and safety. Santos. 99 R.I. 439, 208 A.2d 387. The subject ordinance will ameliorate the adverse effects of environmental tobacco smoke. As such, the restrictions certainly protect public health and welfare. The Legislature considers smoking and exposure to secondhand smoke hazardous to public health, safety and welfare. See, R.I. Gen. Law 23-30.6-1, et seq. It follows that municipalities can attach conditions on the issuance of licenses to operate public eating facilities in order to protect patrons from exposure to such dangers. The Court finds that the Legislature implicitly empowered the Town of East Greenwich to regulate smoking in eating facilities as a condition to the issuance of a victualing license. To hold otherwise would result in absurdities or would defeat the underlying purpose of the legislation.
The Court next considers whether the Town of East Greenwich additionally derives its power to enact Ordinance 686 under Title 3 of the General Laws.[3]
Municipalities have the authority to issue liquor licenses and to attach conditions on those licenses to further the purpose of Title 3. Thompson. 512 A.2d 837. The General Assembly has provided that Title 3 "...shall be construed liberally in aid of its declared purpose which declared purpose is the promotion of temperance and for the reasonable control of traffic in alcoholic beverages." R.I. Gen. Law 3-1-5.
In El Marocco, 746 A.2d 1228, the Town of Johnston enacted an ordinance which prohibited displays of nudity at commercial establishments that served liquor. El Marocco's challenge to the validity of the ordinance was rendered moot by subsequent legislation that expressly empowered municipalities to restrict entertainment at licensed facilities. Nonetheless, the Court opined that even absent the new legislation, the town was authorized to attach such conditions to the issuance of a liquor license based upon the reasoning set forth in Thompson. 512 A.2d 837. The state has delegated to cities and towns "full and plenary power" to issue liquor licenses. Id.
The authority to regulate the issuance, suspension and revocation of liquor licenses is limited only to the extent that it is exercised to advance the intent of the statutory scheme governing such licenses. Municipalities have broad powers to attach conditions to the issuance of liquor licenses, regardless of whether those conditions effect closing hours or nude entertainment. Thompson, 512 A.2d 837; El Marocco.746 A.2d 1228. Title 3 shall be construed liberally in aid of its declared purpose, which is the promotion of temperance and for the reasonable control of traffic in alcoholic beverages.
Cities and towns have broad and full powers to impose reasonable restrictions on the issuance of liquor licenses. The Court even has found a nexus between nude dancing and the consumption of liquor. El Marocco. 746 A.2d at 1231. Although the Court in El Marocco found such a nexus, the Court did not illustrate how prohibiting nude dancing in nightclubs would promote temperance or the reasonable control of traffic in alcoholic beverages. In fact, the stated purpose of the nude dancing ordinance was "to ensure that the public welfare is taken care of, through the "main[tenance of] the public health, safety and welfare." Id. at 1236. In this regard, its declared purpose is similar to that stated in Ordinance 686. In El Marocco, the Court referred to preserving societal order and morality in the community. Id, at 1237. Regardless of whether the is nude or clothed, the patrons nay consume the same quantity of alcohol, but they may react more peacefully in the absence of nudity.
Plaintiffs suggest a narrow and literal interpretation of the declared purpose of Title 3, but such suggestion is inconsistent with the holding in El Marrocco. To the extent that the word "temperance" when used in the context of drinking alcoholic beverages means abstinence from liquor or drinking in moderation, prohibiting nude dancing might not limit the actual quantity of alcohol consumed by nightclub patrons. Although combining smoking and drinking might not reduce the quantity of alcohol consumed, it will remove the hazard of environmental tobacco smoke far those on the premises. It even is arguable that limitations on smoking in drinking establishments may promote temperance in the literal sense by prompting smokers to interrupt their drinking to leave a smoke-free facility. The tobacco regulations set forth in Ordinance 686 constitute reasonable measures to control alcoholic beverages. The Court finds that the Legislature has given municipalities the power to enact those regulations both under Chapter 24 of Title 5 and under Title 3.
 c. Preemption.
The Court recognizes the supremacy of state laws over local ordinances:
 It is declared to be a fundamental principle that municipal ordinances are inferior in status and subordinate to the laws of the state... It is also recognized in this jurisdiction that an ordinance inconsistent with a state law of general character and state-wide application is invalid. O'Neil, 617 A.2d at 109, (citing Wood v. Peckham, 80 R.I. 479, 482, 98 A.2d 229, 670 (1958)).
Whether the General Assembly has preempted the field of regulating smoking in restaurants and bars depends on what the Legislature intended when it enacted statutes which concern smoking in public places. See, O'Neil, 617 A.2d 104. The Legislature may implicitly preempt local legislation without actually expressing a clear intention to do so. Generally, state laws of statewide application preempt municipal ordinances on the same subject if the Legislature intended to totally occupy the field. Monroe v. Town of East Greenwich, 733 A.2d 703 (RI. 1999). Local legislation is preempted by statewide legislation if it "disrupts the state's overall scheme of regulation..." on the subject matter. O'Neil, 617 A.2d at 109.
The instant case is distinguishable from Munroe, 733 A.2d 703. In Munroe, the Legislature specifically directed town councils to empower planning boards to control land development and subdivision projects. See,45-23-25 through 45-23-74 (the so-called, Development Review Act). The Town Charter diminished the power of the planning board to that of a technical review committee which reviews applications and submits recommendations to the Town Council. The Court found that the Town Charter directly conflicted with the Development Review Act, and as such, it disrupted the state's overall scheme of regulation over land development and subdivision projects. Ordinance 686 does not undermine Chapter 20.6-1 of Title 23. No licensed facility which complies with the ordinance will violate the statute.
Absent a direct conflict between a statute and an ordinance, or some other clear indication, expressed or implied, that the General Assembly intended to occupy the subject field, state law will not be held to preempt local ordinances in a particular area. El Marocco. 746 A.2d 1221; Providence City Coupon v. Cianci, 650 A.2d 499, 501 (R.I. 1994). Ordinance 686 will be declared invalid on the preemption argument only if it disrupts the state's overall scheme of regulating smoking in public places.
In El Marocco. 746 A.2d 1221, the Court found that the Legislature had not preempted the field of regulating entertainment at nightclubs in spite of a statute which restricted dancing at liquor licensed establishments. The Court stated: "...the General Assembly has not manifested a clear legislative intent to deprive the various municipalities of their delegated power to license establishments that serve liquor and to impose reasonable conditions upon the granting of such licenses." Id. at 1232.
The General Assembly has enacted a law which regulates smoking in public places. R.I. Gen. Law 21-20.6-1, et seq. The Legislature expressly stated the purpose of the statute as:
 23-20.6-1. Legislative intent. — The use of tobacco for smoking purposes is being found to be increasingly dangerous, act only to the person smoking, but also to the nonsmoking person who is required to breathe such contaminated air. The most pervasive intrusion of the non-smokers right to unpolluted air space is the uncontrolled smoking in public places. The Legislature intends, by the enactment of this chapter, to protect the health and atmospheric environment of the non-smoker by regulating sacking in certain public ares.
The Legislature declared that smoking tobacco in any form is a "...public nuisance and dangerous to public health..." R.I. Gen. Law 23-20.6-2. State law prohibits smoking in several specific public places, such as the State House, elevators, indoor movie theaters, libraries, at galleries, museums, concert halls, auditoriums, buses, school buildings, college dormitories, courthouse hallways, elderly housing complex hallways, supermarkets, medical offices, laundries and hospitals. R.I. Gen. Law 23-20.6-2(a).
The Act further provides in pertinent part:
 (e)(1) Eating facilities with a seating capacity of fifty (50) or more persons shall have separate seating for nonsmokers and smokers. For purposes of this section, an "eating facility" shall mean any building, structure, room or area maintained as, or held out to the public as, an enclosure where meals are served for consideration of payment excluded, however arc bars, nightclubs, lounges, dance clubs and privately sponsored social affairs. Appropriate arrangements shall be made to ask patrons their preference for the nonsmoking or smoking section prior to being seated. R.I. Gen. Law 23-20.6-2(e)(1)...
 (3) The department of health is hereby authorized to adopt rules and regulations necessary for the implementation and enforcement of this subsection. R.I. Gen. Law 23-20.6-2(e)(3).
The Legislature has enacted additional laws related to smoking. See, R.I. Gen. Law 23-20.7 (Workplace Smoking Pollution Control Act); R.I. Gen. Law 37-15-19 (Protection of state coastline — Adult smoking areas); R.I. Gen. Law 23-20.9 (Smoking in Schools); R.I. Gen. Law 45-2-42
(Town of East Greenwich — Stacking prohibited in municipal buildings). The General Assembly expressly has stated that the use of tobacco for smoking purposes is dangerous, not only to the smoker, but to the nonsmoking person who is forced to breathe second hand smoke. R.I. Gen. Law 23-20.6-1, R.I. Gen. Law 23-20.7-1, R.I. Gen. Law 23-20.9-2, R.I. Gen. Law 45-2-42.
Some of the statutes which regulate smoking in public places authorize the town to adopt rules and regulations necessary for the implementation and enforcement of the law. See, R.I. Gen. Laws 45-2-42, 23-20.9-5 and37-15-19. However, the chapter regulating smoking in eating facilities directs the Department of Health, not the town, to adopt rules and regulations to enforce the provisions of that law. R.I. Gen. Law 23-20.6-2 (e)(3). Plaintiffs rely on R.I. Gen. Law 23-20.6-2 (e)(3) when they argue that the Department of Health has exclusive jurisdiction to regulate public smoking in licensed restaurants and bars.
Although R.I. Gen. Law 23-20.6-2 (e)(1) requires eating facilities to maintain smoking and nonsmoking sections, it does not preclude cities and towns from enacting more stringent rules. R.I. Gen. Law 23-20.6 (e)(3) authorizes the Department of Health to adopt rules and regulations necessary to implement and enforce that particular subsection. That provision does not reveal a legislative intent to preempt the field nor does the ordinance conflict with such power conferred upon the Department of Health. No restaurant or bar in East Greenwich will violate rules and regulations promulgated by the Department of Health if it is bound to comply with stricter regulations. Although the Legislature authorizes the Department of Health to promulgate rules and regulations to implement and enforce this subsection, the General Assembly expressly has extended similar authority to municipalities with reference to other sections of the law regulating smoking. See R.I. Gen. Law 45-2-42, 23-20.9-5 and37-15-19. It does not appear that the Legislature intended to occupy the field thoroughly.
There is no direct conflict between the statute and Ordinance 686, nor is there any other clear indication, either expressed or implied, that the General Assembly intended to occupy the field of regulating smoking in restaurants and bars to the exclusion of local licensing authorities. Plaintiffs' argument that state law preempts the regulation of smoking in restaurants and bars must fall.
 3. Conclusion
The Court finds that the Town of East Greenwich has implied power to impose conditions upon liquor and victualing licenses which includes the power to enact an ordinance regulating smoking in restaurants and bars. Ordinance 686 imposes conditions which are both reasonable and lawful. The ordinance does not violate the Constitution of the State of Rhode Island and reflects a valid exercise of municipal power over local concerns. The Legislature has delegated authority to municipalities to regulate smoking in licensed facilities and has not preempted the field. Health has exclusive jurisdiction to regulate public smoking in licensed restaurants and bars.
Although R.I. Gen. Law 23-20.6-2 (e)(1) requires eating facilities to maintain smoking and nonsmoking sections, it does not preclude cities and towns from enacting more stringent rules. R.I. Gen. Law 23-20.6 (e)(3) authorizes the Department of Health to adopt rules and regulations necessary to implement and enforce that particular subsection. That provision does not reveal a legislative intent to preempt the field nor does the ordinance conflict with such power confined upon the Department of Health. No restaurant or bar in East Greenwich will violate rules and regulations promulgated by the Department of Health if it is bound to comply with stricter regulations. Although the Legislature authorizes the Department of Health to promulgate rules and regulations to implement and enforce this subsection, the General Assembly expressly has extended similar authority to municipalities with reference to other sections of the law regulating smoking. See R.I. Gen. Law 45-2-42, 23-20.9-5 and37-15-19. It does not appear that the Legislature intended to occupy the field thoroughly.
There is no direct conflict between the statute and Ordinance 686, nor is there any other clear indication, either expressed or implied, that the General Assembly intended to occupy the field of regulating smoking in restaurants and bars to the exclusion of local licensing authorities. Plaintiffs' argument that state law preempts the regulation of smoking in restaurants and bars must fail.
 3. Conclusion
The Court finds that the Town of East Greenwich has implied power to impose conditions upon liquor and victualing licenses which includes the power to enact an ordinance regulating smoking in restaurants and bars. Ordinance 686 imposes conditions which are both reasonable and lawful. The ordinance does not violate the Constitution of the State of Rhode Island and reflects a valid exercise of municipal power over local concerns. The Legislature has delegated authority to municipalities to regulate smoking in licensed facilities and has not preempted the field.
The Plaintiffs' motion for summary judgment is denied. The Defendants' motion for summary judgment is granted. The stay previously issued shall remain in effect and expire on March 19, 2001 as previously ordered.
Counsel shall submit the appropriate order and judgment for entry.
[1] 5-24.1. Licensing and regulatory power of towns and cities. — (a) The town council of every town and the city council of every city has the power to regulate, including the setting of hours of operation, the keeping of taverns, victualing houses... by granting licenses for those activities... or by refusing to grant the licenses; provided, that except as provided in subsection (b) all licenses issued pursuant to this section entitle the license holder to operate continuously after six o'clock (6:00) A.M., but not after two o'clock (2:00) A.M. (c) For the purposes of this chapter a victualing house is a business where food is prepared and/or consumed on the premises.
[2] 5-24-2. Terms and duration of licenses. — Every license issued...shall...continue and be in force until the first of December, unless invited sooner for cause.
[3] 3-5-1. License required for manufacture, sale, or importation of beverages. — No person shall at any time...sell or suffer to be... sold or keep or suffer to be kept on his or her premises or possession under his or her charge for the purpose of sale within this state any beverage unless licensed to do an as provided in this title...
3-5-5. Towns and cities in which licenses authorized. — It is lawful in only town and city in this state, except the town of Barrington, to issue licenses for...keeping fir sale, and sale of beverages in these cities and towns...
3-5-15. Local licensing authorities. — The right, power. and jurisdiction to issue (with exceptions not pertinent to this case) licenses authorized by this title...are in the town councils or license boards of the several towns, and in the mayors and city councils in die several cities...In the several cases where the town councils or license boards of the several towns, the mayors and city councils of the several cities, or the mayor and council of a city are authorized to issue licenses, they are for that purpose constituted license commissioners...
3-5-21. Revocation. Fines for violating conditions of license. — (a) Every license is subject to revocation or suspension and a licensee is subject to fine by the board, body or official issuing the license... for breach by the holder of the license of the conditions on which it was issued or it violation by the holder of the license of any rule or regulation applicable, or for breach of any provisions of this section.